## YOUNGSTOWN ICE CO v
## MINERAL PRODUCTS CORPORATION

Ohio Appeals, 7th Dist, Mahoning Co

Decided Sept 30, 1932

Kennedy, Manchester, Ford, Bennett & Powers, Youngstown, and E. R. Zieger, Youngstown, for plaintiff.

Anderson & Lamb, Youngstown, for defendant.

POLLOCK, J.

Now, it is urged in argument, and strongly urged, by the Gravel Company, that there were two representatives of each company involved in these arrangements, and that is correct, and that the jury has found that the contract made was as claimed by the Gravel Company, and that this court can not interfere with the verdict because the weight to be given to the testimony of these several witnesses was for the jury. We agree with that proposition, that if it is a question only of this oral agreement, a reviewing court could not interfere with

the verdict of the jury, but we think there is more involved than that in determining the rights of these parties.

It is admitted by the parties that the bid of fifty five or forty five cents a ton, the Gravel Company agreed to furnish the full amount of the gravel needed to construct the dam, but the Gravel Company claims it did not do that when the price was reduced to thirty-five cents. It claims that in the contract it only agreed to furnish such gravel as it could not sell to some one else at a higher price.

Looking at the contract as testified to by Mr. McGaw, the president of the Gravel Company, such·a construction could hardly be placed on his language in view of the former contract. Then on that day or the next day the Ice Company writes this letter, explaining, as we have said, what Guthrie & Company would require of the Ice Company in the shipping of this gravel as nearly as could be estimated and requested an answer. No answer was given to that letter; in fact, the Gravel Company has never written anything in regard to this contract, but it is agreed that the president of the Gravel Company called Mr. Holway on the.phone and they had a conversation. The parties disagree again, Mr. McGaw claiming that he told Mr. Holway that they never agreed to furnish the full amount of this gravel as required. Nothing more appears until after a contract was entered into by the Ice Company for the furnishing of this gravel with the A. Guthrie & Company, and then a bill or offer to purchase is sent on the 24th.

It is admitted by the Gravel Company that it knew that the Ice Company was expecting it to sign this order and expecting it to furnish all of the gravel required in the construction of the dam. The Gravel Company knew that if it did sign the offer and return it that the Gravel Company would be required to furnish all of the gravel required for the construction of the dam. The Gravel Company admits that it received these letters asking for a·confirmation of this order. The Gravel Company also admits, or at least Reese does, that he in other transactions knew that this was the way the Ice Company did business. The Gravel Company says that it knew if it signed and returned the offer it would be bound to furnish all of the gravel named in the offer to purchase. The conclusion can be drawn from what the Gravel Company says that that was the reason it did not sign the order. It did not want to be bound. This contract signed by

the Ice Company was performed by the Gravel Company in every particular until March. When the contractor, A. Guthrie & Company, required gravel it would send an order to the Ice Company. That order was sent by the Ice Company to the Gravel Company and was filled. The offer or proposition to purchase sent by the Ice Company to the Gravel Company on the 24th of September carried a number. In filing these orders and sending statement of the shipping of the order, the Gravel Company noted that it was under this number. Then we come to the legal question in this case, and that is what effect did the retaining of this order and proceeding to fill it without saying anything until, for some reason the Gravel Company did not desire to do so longer, what effect did it have on the contract? Did retaining the offer to purchase and beginning to furnish the gravel as required, without notice that it was not doing so under the offer, bind the· Gravel Company to perform the entire offer to purchase?

Our attention has been called to more authorities than we are going to refer to on this proposition. The question usually arises when there is an order sent by one party and the other party accepts it with some modification and the goods are furnished without any objection made by the purchaser, it is held that the parties are bound by the conditions in the acceptance order or the modification of an order with the purchaser permitted to be filled without any objection, but the same rule will prevail when the offer to purchase is retained and the seller proceeds to comply with the offer without any objection. The only objection by the Gravel Company to this written order to purchase was the amount of gravel that was required.

The Court of Appeals had this question in **Wallingford Coal Company v Cuyahoga Builders Supply Company, 18 Oh Ap, 488,** where the syllabus recites:

"Where the acceptance of an offer to sell a product of a specified quality as a stipulated price imposes new terms as to kind and quality, the assent to such new terms may be inferred from the fact that the parties proceed to do business under the conditional acceptance."

In that case the court cites the case of American Lumber & Manufacturing Company v Atlantic Mills & Lumber Co., 290 Fed., 632. The part we wish to refer to is on page 634. In that case there was an

order sent to purchase certain goods. It was accepted with modification. The goods were sent and retained:

"If the defendants' written orders and the plaintiff's written acceptance were all there was in the case to indicate the meeting of the minds of the parties, there would be substance in the defendant's contention, for it is elementary law that to make a valid contract the minds of the parties must meet on the same terms in the same sense. But the meeting of minds of contracting parties may occur—and be shown —not by words alone but by conduct. Such conduct may be that of either party, or, indeed, of both parties. In this case, however, the conduct was that of the defendant, raising the question (as we regard it) whether the contracts sued upon were in existence, not because of the plaintiff's conditional acceptance of the defendants' offers, but because of the defendant's assent to the conditions imposed by the plaintiffs in accepting the defendant's offers. Where one makes an offer and assents to an acceptance which is not responsive to the proposal, a contract is made and he is, of course, bound by it. The offerer's assent to new terms imposed by the offeree in his acceptance may be inferred from the fact that the parties thereafter proceeded to conduct business under the conditional acceptance."

The principle of law is recognized in **Machine Company v Insurance Company**, 50 Oh St, 549, and again in **Davis Laundry & Cleaning Company v Whitmore**, 92 Oh St, 44. The rule is that where a party although not accepting the offer, proceeds to and continues to fill the order, it is an acceptance of it, and both parties are bound not by a verbal contract or written contract, but by the action of the parties. There was a misunderstanding between these parties in regard to the verbal contract at their first meeting. Which was right is not very important. Each one may have thought as they now claim they did, and the same may be said regarding the telephone conversation on the 8th of September. Following that conversation the Ice Company evidently sent this offer to purchase, believing, or at least claiming that the contract was to fill this order for the gravel for the construction of the dam and requested that the Gravel Company acknowledge the receipt of this order. That the Gravel Company did not do and did not answer after requested by letters, we think intending to

go along without being bound to furnish the full amount, but we think the Gravel Company did bind itself to furnish the full amount. The Gravel Company admits that it knew the Ice Company thought it was filling this contract for the gravel for the dam, and we think that the Gravel Company accepted this contract as sent by this offer to purchase and were required to furnish the sand. There was a further conversation after August when the Ice Company failed to make prompt payment, in which there is a claim made by the Gravel Company that there was then an agreement to only furnish so many cars, possibly, a day. This conversation does not affect the conclusion reached and it is a question for the jury to determine whether at that time this contract as we think made by this order was modified or not. So we will not discuss that conversation, but we think this judgment is manifestly against the weight of the evidence as it appears from the actions of these parties. The judgment of the court below is reversed on the ground that it is against the weight of the evidence.

ROBERTS and FARR, JJ, concur in the judgment.