GEORGE P. BRAUN et al.

v.

S. F. HESS & CO.

*Opinion filed October 19, 1900.*

1. INTEREST—*what constitutes a contract to pay interest.* A contract to pay interest is evidenced by invoices bearing the words, "Bills bear interest after maturity, * * * terms sixty days," which were sent with each shipment to the purchaser, who received the goods upon the terms stated in the invoices.

2. CONTRACTS—*when contract is that of the agent and not of the principal.* A guaranty against loss of rebates on account of handling the goods sold by one who signs the guaranty in his own name as "Gen'l Agt." of a corporation, is the individual contract of the agent, unless it is shown by the evidence that he had authority to bind the corporation by the guaranty.

3. PRINCIPAL AND AGENT—*what is not an implied power of general agent.* Authority of the general agent of a corporation handling cigarettes and tobacco to bind the corporation by a contract with a purchaser of its goods, guaranteeing him against loss of rebates from another corporation on account of his handling such goods, is not implied, as a matter of law, from the mere fact of agency.

*Heegaard* v. *S. F. Hess & Co.* 86 Ill. App. 544, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

ASHCRAFT & GORDON, (R. M. ASHCRAFT, of counsel,) for appellants.

DARROW, THOMAS & THOMPSON, (MORRIS ST. P. THOMAS, of counsel,) for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action of assumpsit, brought by appellee, a corporation doing business in Rochester, New York, to recover a balance claimed to be due it on an open account for cigarettes and tobacco sold and delivered to

William H. Heegaard, of whose will the appellants are executors. The declaration contains the common counts only, and the pleas/ are the general issue and set-off. The first trial resulted in a verdict and judgment against appellee for $286.86, which, on appeal to the Appellate Court, was reversed and the cause remanded. (54 Ill. App. 227.) On the second trial the court instructed the jury to find the issues for the plaintiff and to assess the plaintiff's damages at the sum of $903.08, with interest thereon at the rate of five per cent per annum from October 26, 1890, to the day of trial, which resulted in a verdict and judgment in favor of appellee for the sum of $1260.49. This judgment was affirmed by the Branch Appellate Court for the First District, and the present appeal is prosecuted from such judgment of affirmance.

It is first contended by appellants that the court erred in peremptorily instructing the jury to find for the plaintiff. As we understand the evidence of Mr. Heegaard, as abstracted, the goods sued for by appellee had all been received by him; that the purchase price thereof was $914.03, from which should be deducted $10.95 freight paid by him, which left $903.08 due the plaintiff. We think it can fairly be said from the evidence there was no dispute as to the amount of appellee's claim.

It is further contended the court erred in instructing the jury to allow appellee interest on its claim from October 26, 1890, to the date of trial. At the head of each invoice sent by appellee to Heegaard at the time the goods were shipped, appear the following: "Bills bear interest after maturity, and are subject to sight draft;" also the words, "Terms sixty days, two per cent discount for cash within ten days." The date of the last bill was August 26, 1890. The goods were shipped by appellee and received by Heegaard upon the terms stated in the invoices, which constituted, under the circumstances, a contract to pay interest. The case of *Lambeth Rope Co.* v. *Brigham*, 170 Mass. 518, which was an action to recover

the price of goods sold, is an authority directly in point. The court, on page 522, say: "It appeared that the plaintiff was accustomed, when it sent the goods, to send a bill of them, on the face of which were the words, 'Terms thirty days.' The judge instructed the jury as follows: 'Now, if all of those bills for these goods were in this form, terms stated at thirty days, and the party took the goods with that upon it and made no objection to that in any way, it would be an implied agreement that that was the time within which the goods were to be paid for, and that if they were not paid for, after that time interest would begin to run by way of damages from the expiration of thirty days.' There is no evidence of any express agreement in regard to the time when the goods should be paid for nor in regard to the time when interest should begin to run. We are of the opinion that the instruction was correct. In the absence of any agreement the price of the goods would be payable on delivery. The parties could make any agreement about it that they chose to make. If the plaintiff notified the defendant that it was willing to give him a credit of thirty days on each bill and that the price would be payable at the expiration of that time, it was a proposition in the defendant's favor, and if he made no objection his assent would be implied, and he would be bound by the contract."

We think that the court did not err in instructing the jury to find for appellee, unless the defense set up in the plea of set-off was sustained.

The plea of set-off filed by defendant alleged that, before plaintiff's cause of action accrued, defendant was purchasing cigarettes from the American Tobacco Company, and was receiving a rebate thereon of thirty cents a thousand in consideration that defendant would not sell cigarettes manufactured by any other person; that in consideration that defendant would purchase of plaintiff certain cigarettes manufactured and sold by plaintiff, known as "Creoles" and "Diadems," plaintiff promised

the defendant to indemnify and save him harmless against and from any loss of rebates from the American Tobacco Company on account of handling plaintiff's cigarettes; that defendant, relying upon such promise, and upon the sole consideration thereof, bought of plaintiff a large number of cigarettes and paid plaintiff large sums of money therefor; that defendant also bought from said American Tobacco Company a large number of its cigarettes and paid it large sums of money therefor, and by reason of making the aforesaid promises with the plaintiff, and by reason of selling and handling the plaintiff's cigarettes, defendant lost large sums of money from the American Tobacco Company, to-wit, the sum of thirty cents per thousand on all the cigarettes of the American Tobacco Company, sold by defendant, which sums the plaintiff refused to pay to defendant, etc., to the damage of the defendant of $1500, etc.   To sustain the defense set up in said plea the defendant introduced in evidence the following memoranda or agreements:

"51 WABASH AVE., CHICAGO, ILL., *May 26, 1890.*
"*Mess. W. H. Heegaard & Co., City:*

"GENTLEMEN—We will guarantee you from any loss of rebates from the American Tobacco Co. on account of handling Creole and Diadem cigarettes.

"Yours truly,          J. E. AVERY,
*Gen'l Agt. S. F. Hess & Co.*"

"CHICAGO, *May 28, 1890.*
"*Mess. W. H. Heegaard & Co., City:*

"GENTLEMEN—We, in consideration of your handling our cigarettes, guarantee that you will receive the rebate of 30c pr. M on all cigarettes you handle manufactured by the Amer. Tob. Co. or its branches, from April 1, 1890, until April 1, 1891.

"Yours truly,          J. E. AVERY,
*Gen'l Agt. S. F. Hess & Co., Rochester, N. Y.*"

The controlling question in this case is, did the evidence show that J. E. Avery had authority to execute said memoranda or agreements, and thereby bind appellee?   The law is well settled in this State (*Powers* v.

*Briggs,* 79 Ill. 493; *McNeil* v. *Shober & Carqueville Lithograph-
ing Co.* 144 id. 238; *Frankland* v. *Johnson,* 147 id. 520;) that
these agreements on their face are the individual obliga-
tions of J. E. Avery, and not of appellee.   The words,
"Gen'l Agt. S. F. Hess & Co.," following the signature of
J. E. Avery, are mere *descriptio personœ.*   The burden of
proof was upon the defense to show authority on the part
of Avery to execute said memoranda or agreements.
There is no pretense that any proof whatever was offered
of express authority from the appellee to Avery to exe-
cute the particular memoranda or agreements offered in
evidence.   There was, therefore, an entire absence of
proof of such authority, unless it can be said that the
proof shows that J. E. Avery was the general agent of
the appellee, and therefore had implied authority to bind
appellee by such memoranda or agreements.   Conceding
such general agency was established, such authority, in
our judgment, is not implied as a matter of law.   The
appellee having made a clear case, and the defense hav-
ing failed for want of proof tending to establish a fact
material and necessary thereto, the instruction directing
a verdict for the appellee was proper.

The case of *Kinser* v. *Calumet Fire Clay Co.* 165 Ill. 505,
is upon the facts very much like the case at bar, and, we
think, decisive thereof.   On page 508 we say: "It is clear
that the evidence introduced on behalf of the plaintiff
entitled it to the judgment rendered, unless the defense
set up in the plea of set-off was sustained.   It is not
claimed that any proof whatever was offered of express
authority from the plaintiff to Hartford to enter into a
contract like that set up in the plea.   There was there-
fore an entire absence of proof of such authority, unless
it can be said that, being the agent of the company to
sell its sewer-pipe, authority to bind it by his agreement
that a purchaser should lose nothing upon a contract is
implied,—and such is clearly not the law.   (*Toledo, Wabash
and Western Railway Co.* v. *Elliott,* 76 Ill. 67; *Cooley* v. *Per-*

*rine*, 41 N. J. L. 322; Story on Agency,—9th ed.—sec. 170.)
If, then, what was said between the parties, as detailed
by the defendant, amounted to a contract on behalf of
the plaintiff to re-pay the defendant all money, which he
might lose on the Anderson contract, (which is certainly
very doubtful,) the plaintiff is not bound thereby, because
no authority to make it was shown. The plaintiff hav-
ing made a clear case, and the defense wholly failing for
want of proof tending to establish a fact material and
necessary thereto, the court was justified in peremptorily
instructing the jury to find for the plaintiff."

We are of the opinion that the circuit court did not
err in refusing to allow the defense to introduce proof
showing a custom of agents of cigarette manufacturers
to make contracts for rebates in the city of Chicago at
about the time the memoranda or agreements offered in
evidence bear date, as the testimony of Mr. Heegaard
shows he did not rely upon a custom at the time the
memoranda or agreements offered in evidence were made,
but that he relied upon the statement of Avery that he
had obtained authority from his principal to make such
contract. Before the contract was made, as appears from
Mr. Heegaard's testimony, Avery, in effect, informed him
he had no authority to make such agreement, but that
he would consult his principal in Rochester, where he
expected to go in a short time; that no contract was
made until his return from Rochester, when he informed
Heegaard it was all right, and gave him the memoranda
or agreements offered in evidence.

We are of the opinion there is no reversible error in
this record, and that the judgment should be affirmed.

*Judgment affirmed.*