## AMERICAN LUMBER & MFG. CO. v. ATLANTIC MILL & LUMBER CO.

(Circuit Court of Appeals, Third Circuit. June 23, 1923.)

No. 2997.

1. **Contracts ⬅15—Meeting of minds essential.**

   To make a valid contract, the minds of the parties must meet on the same terms in the same sense.

2. **Contracts ⬅16—Meeting of minds may be shown by conduct.**

   The meeting of the minds of the parties to a contract may be shown, not only by their words, but by the conduct of either or both.

3. **Contracts ⬅23—Assent to acceptance stating terms different from offer constitutes binding contract.**

   One who makes an offer and assents to an acceptance not responsive to the proposal enters into a contract on the terms of the acceptance and is bound thereby.

4. **Contracts ⬅23—Assent to new terms embraced in acceptance inferred from transactions under conditional acceptance.**

   Where the acceptance of an offer imposes new terms, the proposer's assent to such new terms may be inferred from the fact that the parties thereafter proceeded to conduct business under the conditional acceptance.

5. **Contracts ⬅29—Existence and terms of contract for jury under conflicting evidence.**

   Where the evidence is conflicting as to the existence of a contract, the question is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms.

6. **Sales ⬅177—Embargo on shipments to particular states not affecting contract containing no reference to such territory.**

   Where defendant's order for carload lots of lumber designated shipments to be consigned to defendant in care of rail carrier at Cape Charles, Va., and there was nothing in the contract to disclose defendant's intention to dispose of the lumber in New England, the refusal of plaintiff, the seller, to discontinue shipments on defendant's request because of a government embargo on lumber shipped through the Cape Charles gateway, destined for New England states, thus closing that section of the country to the shipment of lumber, except by permits, was no justification for defendant's cancellation of the contract.

7. **Sales ⬅177—Embargo merely suspending transportation not authorizing purchaser to cancel contract.**

   A government embargo on the transportation of lumber through the Cape Charles gateway destined for New England States *held* to operate only to suspend transportation, and, if applicable to the contracts in question, affected both the shipper and consignee alike, and after the embargo was lifted, or if, pending the embargo, permits were obtained, the parties were bound to resume the performance of their respective undertakings, and the purchaser was not entitled to cancel contracts for

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the purchase of lumber intended by him to be shipped to the New England states.

8. Sales ⬗387—Whether goods specially manufactured properly submitted to jury.

Where contracts for the purchase of roofers described the lumber as 1x6 and 1x8 No. 2 common roofers, "surfaced on two sides and center matched," and also with "edge and center bead on one side," the court on sharply conflicting testimony properly submitted to the jury the question whether the lumber was to be specially manufacured or was a staple product, as affecting the measure of damages.

9. Sales ⬗71(3)—Seller entitled to select cars where size of cars not specified, and instruction restricting recovery to average carload not erroneous.

Where a contract for the purchase of lumber specified carload lots, without reference to the size of the cars, the seller was entitled to deliver in cars of any size available, and the purchaser cannot complain of an instruction which restricted the seller's recovery for breach of the contract to damages based on the average carload.

10. Appeal and error ⬗1033(8)—Calculation of interest favorable to appellant not reversible error.

In a seller's action for breach of contract, where the verdict was for a stated sum, with interest, and the judgment entered thereon was for the principal sum of the verdict, with interest calculated from a date later than the breach, any error in the date from which interest was calculated was favorable to defendant and harmless.

11. Trial ⬗334—Verdict including interest, but specifying no date, though informal, not invalid.

A verdict in an action for breach of a sales contract for a stated sum, with interest, which specified no date from which the interest should be computed, though informal, was not uncertain, and a judgment rendered thereon was not defective.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action at law by the Atlantic Mill & Lumber Company against the American Lumber & Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George D. Wick, Ivory & McKay, William W. Booth, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for plaintiff in error.

Arthur O. Fording, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The judgment of the District Court brought here by this writ of error was entered for the plaintiff on a verdict in an action of assumpsit. The transaction out of which the controversy arose was as follows:

Speaking of the parties as they stood in the trial court, the defendant is a corporation of the State of Pennsylvania engaged in the business of selling lumber and the plaintiff is a corporation of the State of Georgia engaged in the business of manufacturing lumber.

On April 22, 1916, the defendant ordered from the plaintiff on one of its printed order forms forty cars of yellow pine "roofers," of size and kind described, at a named price, terms of payment— "Usual," shipments to be made within a given time and to be consigned to the defendant in the care of a rail carrier at Cape Charles, Va.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff replied on a printed form of its own, stating:

"We acknowledge receipt of your order as listed above, which shall have our careful attention, for which we thank you. Please examine and advise us promptly if not entered correctly."

This writing, purporting to be an acceptance contained as terms of payment "Cash less two per cent.," named price f. o. b., and concluded with the statement that the defendant's order "is accepted subject to [certain] conditions," such as, claims to be made within five days of receipt of lumber; responsibility of the shipper to cease on the issuance of the bill of lading; shipments to be contingent upon delays by carrier, strikes, accidents, etc.; and lumber to be manufactured and graded according to the rules of the Southern Pine Association—all new matters and therefore not touched upon in the defendant's order.

On April 29, 1916, the defendant gave the plaintiff an additional order for sixty cars of yellow pine roofers of one description at one price and forty cars of roofers of another description at another price, on the same order form and on substantially the same terms as in the first order. The plaintiff accepted this order on its regular acceptance form containing the printed conditions quoted—matters not included in the defendant's order.

As the defendant made no reply to the plaintiff's request that it be informed if the order was "not entered correctly," the plaintiff at intervals shipped nine and one-half cars of roofers of one size and two and one-half cars of another size and the defendant accepted and paid for them according to the terms of the acceptances. For reasons appearing later the defendant directed the plaintiff to cancel all unfinished orders for roofers. On the plaintiff's refusal to do so the defendant declined to accept and pay for further shipments. Whereupon the plaintiff brought this action for breach of the contracts.

The principal defense made by the defendant—first by affidavit of defense in the nature of a demurrer, and (after an adverse ruling) next by special traverse raising an issue submitted at the trial—was that no contracts such as were sued upon, existed. This defense was based upon the contention that the plaintiff's acceptances of the defendant's orders were conditional and were for that reason counteroffers and as such were rejections of the original orders, leaving the minds of the parties wholly apart. 1 Williston on Contracts, §§ 61, 67, 72, 73; 13 Corpus Juris, §§ 82, 86.

[1-4] If the defendant's written orders and the plaintiff's written acceptances were all there was in the case to indicate the meeting of the minds of the parties, there would be substance in the defendant's contention, for it is elementary law that to make a valid contract the minds of the parties must meet on the same terms in the same sense. H. & N. H. Co. v. Jackson, 24 Conn. 514, 517, 63 Am. Dec. 177. But the meeting of minds of contracting parties may occur—and be shown —not by words alone but by conduct. Hudson v. Columbian Transfer Co., 137 Mich. 255, 100 N. W. 402, 109 Am. St. Rep. 679; Braun v. Hess & Co., 187 Ill. 283, 58 N. E. 371, 79 Am. St. Rep. 221. Such conduct may be that of either party, or, indeed, of both parties. In this case, however, the conduct was that of the defendant, raising the

question (as we regard it) whether the contracts sued upon were in existence, not because of the plaintiff's conditional acceptances of the defendant's offers, but because of the defendant's assent to the conditions imposed by the plaintiff in accepting the defendant's offers. Where one makes an offer and assents to an acceptance which is not responsive to the proposal, a contract is made and he is, of course, bound by it. Iron Works v. Douglas, 49 Ark. 355, 5 S. W. 585; Baldwin v. Com., 11 Bush (Ky.) 417; Underhill v. North American K. G. L. Co., 36 Barb. (N. Y.) 354; Tilt v. La Salle Silk Mfg. Co., 5 Daly (N. Y.) 19; Treat v. Ullman, 34 Misc. Rep. 553, 69 N. Y. Supp. 974; Gray v. Foster, 10 Watts (Pa.) 280. The offeror's assent to new terms imposed by the offeree in his acceptance may be inferred from the fact that the parties thereafter proceeded to conduct business under the conditional acceptance. McKell v. C. & O. Ry. Co., 175 Fed. 321, 99 C. C. A. 109, 20 Ann. Cas. 1097.

[5] Having in mind the defendant's conduct in accepting and paying for twelve cars of lumber after the plaintiff had conditionally accepted its orders, the trial court submitted to the jury the question whether the defendant had, as evidenced by its conduct, assented to the plaintiff's terms and thereby had brought their minds together. The defendant assigns this as error on the ground that the question of the existence of the contracts was one of law for the court to decide. In this contention we do not concur for here the existence, not the construction, of the contracts was the point in issue. When the evidence is conflicting it is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms? 9 Cyc. 776 and cases. As the existence of the contracts was, on this issue, the only question involved and as it turned on evidence susceptible of opposite inferences, the trial court we think, did not commit error in submitting it to the jury.

During the contract deliveries the government placed an embargo on lumber shipped through the Cape Charles gateway destined for New England states, thus closing that section of the country to the shipment of lumber except by permits. Permits, the defendant alleged, were difficult to obtain. Therefore, it requested the plaintiff to discontinue shipments. The plaintiff ignored the request. "Whereupon the defendant notified the plaintiff to cancel all unfinished orders for roofers." Upon the plaintiff's refusal to agree to a cancellation of the contracts, the defendant declined to receive more lumber. This suit followed.

[6, 7] The defendant avers by its pleading that in the negotiations for the purchase of roofers the plaintiff became aware of its intention to dispose of them in New England. In view of this knowledge the defendant maintained at the trial that even if the contracts sued upon were in existence, the conduct of the plaintiff in refusing to stop shipments justified it (the defendant) in rescinding the contracts. We are inclined against this contention for two reasons: First, because the contracts neither called for the delivery of roofers in New England, nor did they limit the defendant in the sale of roofers to that section of the country. Upon delivery f. o. b., consigned to Cape Charles, Va., the lumber became the property of the defendant, free to be sold and

delivered anywhere. And second, the embargo, as the court instructed the jury, operating only to suspend transportation, operated only to suspend the contracts, affecting both the shipper and consignee alike, and after the embargo was lifted, or if, pending the embargo, permits were obtained, the parties were bound to resume the performance of their respective undertakings. On the facts there was a question whether the defendant ever tried to obtain permits or, trying, whether it ever failed to obtain them, or whether the shipments after reconsignment at Cape Charles were ever delayed by the embargo.

[8] The defendant assigns error in the court's instruction to the jury on the measure of damages. On this issue there were three opinions—the plaintiff's, the defendant's and the court's. This issue turned on the character of the lumber contracted for—whether special or staple, that is, whether it was to be specially manufactured or was carried in stock. If the former, admittedly the true measure of damages was the difference between the cost of manufacture and the contract price; if the latter, it was the difference between the contract price and the market price. The lumber contracted for was described as 1x6 and 1x8 No. 2 Com. Roofers S2S&CM :E&CBIS, denoting that rough boards 1x6 and 1x8 in size are carried in stock and are worked up according to orders, which in this case signified that they should be "surfaced on 2 sides and center matched" and also with "edge and center bead on 1 side." The plaintiff introduced evidence that lumber of this description was specially manufactured; the defendant produced evidence that it was a staple; each moved the court to instruct the jury on the measure of damages in line with its contention of fact. In the court's view the testimony was in sharp conflict and, accordingly, it left the question of the character of the lumber to the jury with appropriate instructions on the law according to its finding. Both the plaintiff and defendant thought the court was wrong. We think it was right.

[9] On evidence showing the maximum, the average and the minimum quantity of roofers cars would carry, the court instructed the jury that if they found for the plaintiff they should base their verdict on an average carload. The defendant assigns this as error on the contention that the measure should be the minimum carload. The contracts called for cars without reference to size, leaving the plaintiff to make deliveries, had the contracts been carried out, in cars of any size according as cars were available, or, had it chosen, it could have made deliveries only in cars of maximum size. We think the defendant cannot complain of an instruction which restricted recovery to the average carload.

[10, 11] The verdict was for a stated sum "with interest;" the judgment entered thereon was for the principal sum of the verdict with interest calculated from a date which shortly followed the breach. The act which constituted the breach and the date on which it occurred were not in dispute. The defendant, while not excepting to the date from which interest was calculated, assigns error in the judgment because of the absence of date in the verdict. The defendant does not discuss this question in its brief; nor can we find that the question has been saved. If there is an error of date, it is a slight one,

and as the date from which interest was calculated was later than the undisputed date of the breach, the error, if any, is in favor of the defendant. The verdict, though informal, is not uncertain and therefore the judgment entered thereon is not defective. New Orleans & C. R. Co. v. Schneider, 60 Fed. 210, 212, 8 C. C. A. 571; Miller v. Steele, 153 Fed. 714, 722, 82 C. C. A. 572.

The judgment below is affirmed.