345 P.2d 210

**COMMERCIAL STANDARD INSURANCE COMPANY, Appellant,**

v.

**O. M. CLEVELAND and M. W. Douglas, Appellees.**

**O. M. CLEVELAND, Cross-Appellant,**

v.

**M. W. DOUGLAS, Cross-Appellee.**

No. 6504.

Supreme Court of Arizona.

Oct. 21, 1959.

Struckmeyer, Whitney & Perry, Phoenix, for appellant.

Carl W. Divelbiss and Melvin J. Owens, Phoenix, for appellee, O. M. Cleveland.

Lewis, Roca, Scoville & Beauchamp, Phoenix, for appellee, M. W. Douglas.

FRANK E. THOMAS, Superior Court Judge.

This is an appeal from a judgment in favor of the defendants-appellees, O. M. Cleveland and M. W. Douglas, and against the plaintiff-appellant, Commercial Standard Insurance Company, entered upon motion of the defendants after the close of plaintiff's evidence in an action to recover an amount allegedly owed plaintiff upon a written contract. The parties will be referred to here as they appeared in the lower court.

The defendant O. M. Cleveland has appealed a judgment by the court entered against him in favor of the defendant M. W. Douglas on Douglas' cross-complaint against him.

The rather involved facts giving rise to this action are essentially as follows: During the year 1949 and prior thereto, defendants were partners operating their partnership business of general insurance agents.

During the above year said defendants, who were agents for the plaintiff insurance company, encountered serious financial difficulties necessitating additional operating capital. Plaintiff expressed willingness to assist defendants in their financial plight. After considerable discussions, plaintiff and defendants arrived at a solution of defendants' dilemma by securing a loan from the Valley National Bank in the sum of $16,000. The loan was secured on agreement of plaintiff with the bank to indemnify the bank by its bond for the repayment of the loan if said defendants did not pay. Plaintiff executed its indemnity bond to the Valley National Bank. For securing this financial assistance, it was, after various changes, ultimately agreed that defendants were to pay plaintiff the sum of $4,000. Said indebtedness was acknowledged by defendants in writing on several occasions.

At this point clarification of the issues involved herein require amplification of the details of the above-mentioned loan of $16,000. Said loan was evidenced by a promissory note bearing four per cent interest, signed by the defendants, and on its due date was paid in full by said defendants.

It is apparent that to induce the Valley National Bank to make a loan to defendants, plaintiff executed an indemnity bond to the bank, for which the full and regular fee of two per cent was charged by plaintiff to defendants, and by defendants paid to plaintiff. This premium charge, amounting to $320, was in addition to the $4,000 which is attempted in this action to be charged against the defendants by plaintiff. It thus appears that for the execution of the indemnity bond to the bank, plaintiff seeks to recover from defendants $4,000 over and above the regular premium charge for the execution of the indemnity bond.

The above-mentioned partnership, composed of the two defendants, was subsequently dissolved, and one of the partners, O. M. Cleveland, acquired the assets and assumed the liabilities of the partnership, agreeing with M. W. Douglas that he would, "indemnify and save harmless (M. W. Douglas) from any and all liability, claim, demand, damages or expenses for and on account thereof."

Complaint was filed by the plaintiff against the defendants on February 18, 1955, praying for judgment in the amount of $4,000, together with costs and a reasonable sum for attorney's fees.

The defendants filed separate answers to the complaint, and defendant Douglas filed a cross-claim against defendant Cleve-

land, praying that he have judgment against Cleveland in the amount of any judgment obtained by the plaintiff against him. The cross-claim further demanded costs and attorney's fees.

It further appears from the record that on January 8, 1957, while the case was pending in Superior Court, plaintiff's attorney orally contacted the attorney for defendant Cleveland and notified him he intended to take certain depositions in Fort Worth, Texas, on January 10th. Cleveland's attorney found himself unable to go to Fort Worth personally and, therefore, contacted a Fort Worth law office and requested it to appear on behalf of Cleveland. This was done, and a statement for $75 for this service was forwarded to Cleveland's attorney. This amount was subsequently included in the cost bill, to which the plaintiff has entered its objection.

Finally, on February 24, 1955, after suit being instituted by plaintiff, Cleveland addressed a letter to Douglas, acknowledging that in the event a judgment was rendered on plaintiff's complaint against Douglas, he, Cleveland, would have to pay it. In this letter Cleveland tendered the services of his attorney, Carl Divelbiss, to Douglas, to represent both defendants in the action. The letter contained an offer by Cleveland to pay Mr. Divelbiss' fees in full. This offer was rejected on March 2, 1955, by a letter from Douglas'

attorney, wherein he stated that because of a conflict of interest it was necessary for Douglas to employ independent counsel, and Cleveland was advised that he would be expected to bear the cost of Douglas' independent defense.

The lower Court directed a verdict against the plaintiff and in favor of the defendants on the complaint, allowed the item of $75 attorney's fees as a proper cost item, and awarded Douglas $500 as attorney's fees, assessing this last item against the defendant Cleveland. It was from this judgment that this appeal is taken.

From the foregoing facts it will be seen that three questions are presented to this Court for determination.

1. Was the charge of $4,000 of the Commercial Standard Insurance Company a legitimate charge imposed on the defendants?

2. Was the amount of $75 included in the defendant Cleveland's bill, for attorney's fees incurred in the taking of a deposition in Fort Worth, properly included as a cost item? and

3. Was the defendant Cleveland liable for the attorney's fees incurred by the defendant Douglas in the defense of the action brought by the plaintiff insurance company and in the presentation of a cross-claim against Cleveland?

Section 61–341, A.C.A.1939, provided as follows:

"Only premiums to be charged or reported.—It shall be unlawful for any insurance company or for any officer, or representative of such company, to include in the sum charged or designated in a policy as the consideration for insurance, any fee, charge, or perquisite except the premium for said insurance. Every agent or other representative of a company issuing a policy in this state, shall report to the company the exact consideration charged and written in the policy as a premium for the risk assumed. [R.S.1913, §§ 3421, 3422; cons. & rev., R.C.1928, § 1822.]"

■■■ It is necessary, therefore, to determine whether the $4,000 the defendants agreed to pay plaintiff properly falls within the meaning of this statute, and constitutes an additional insurance premium. We believe it does for the reasons hereinafter set forth.

We agree with the plaintiff's statement that merely because the defendants claimed the contract was harsh and referred to the $4,000 as "blood money," would not make it unenforceable. The parties have a legal right to make such contracts as they desire to make, provided only that the contract shall not be for an illegal purpose or against public policy. A party cannot complain of the harshness of the terms of the contract. S. H. Kress & Co. v. Evans, 21 Ariz. 442, 189 P. 625.

We are concerned here, however, with something more than merely a harsh contract. It is conceded that plaintiff assisted defendants in obtaining the loan from the Valley National Bank. This was accomplished by plaintiff executing its bond of indemnity to the bank, for which defendants paid to plaintiff a standard fee of two per cent of the face value of the indemnity bond. Section 61–801, A.C.A. 1939, provided in part:

"A surety company shall be deemed an insurance company within the meaning of this chapter and its contracts shall be deemed insurance contracts, and it is subject to the laws of this state relating to insurance companies, so far as applicable. [R.S.1913, § 3467; rev., R.C.1928, § 1854.]"

Obviously, at this point plaintiff, by executing a bond of indemnity to the bank and receiving remuneration from the defendants for its execution, was engaged in the insurance business and subject to the rules, regulations and penalties provided by the then existing insurance code.

As heretofore pointed out, plaintiff seeks by this action to recover $4,000 in addition to its regular charge for executing an indemnity bond, and for which it was paid.

294

In view of the foregoing, there seems to be no question that the plaintiff's acts brought it clearly within the statutory regulations of both Sections 61–801 and 61–341, A.C.A.1939.

■ We shall next consider plaintiff's contention that the contract sued upon is enforceable in any event for the reason that Section 61–341, A.C.A.1939, does not contain a penalty clause, and that by virtue thereof the contract is taken out of the area contemplated by Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 in which we held that a contract founded upon an act for which a penalty is imposed by statute is void.

We think, in fact, a penalty clause is provided for a violation of this section, and that that penalty is contained in Section 61–344, which states as follows:

"Violations—Penalty.—Any insurance company knowingly and wilfully violating any provision of this chapter where no other penalty is prescribed, shall be fined not exceeding one thousand dollars [$1,000]; and any insurance agent knowingly and wilfully violating any provision of this chapter where no other penalty is prescribed shall be fined not exceeding five hundred dollars [$500] and shall have his license revoked. [R.S.1913, § 3461; rev., R.C.1928, § 1825.]"

We, therefore, conclude that the plaintiff is bound by our holding in the Northen case supra and that the contract it is suing upon is void and unenforceable.

■ The next question we are called upon to decide is whether it was an error to allow the defendant Cleveland's claim, as an item of cost, the sum of $75 expended by him in payment of Texas attorneys for legal fees for the taking of a deposition in Texas. We believe this was improper.

4 A.R.S. § 12–332 (Section 34–125, A.C.A. 1939) enumerates those items which may be included as costs. Item A2 that costs of taking depositions may be included. The question, then, is whether attorney's fees in this case can be considered a "cost" of deposition.

It is fundamental, of course, that attorney's fees are not recoverable in an action unless provided for by contract or statute. United States Fidelity & Guaranty Co. v. Frohmiller, 71 Ariz. 377, 227 P.2d 1007; Stapley Co. v. Rogers, 25 Ariz. 308, 216 P. 1072; 14 Am.Jur. Costs, Section 63. We do not believe that the statement of defendant Cleveland's attorney, to the effect that he was unable to personally go to Fort Worth for this deposition, takes this item out of the confines of the general rule. Further, we do not believe that merely because a net saving of approximately $67 was effected by hiring a Texas at-

torney, rather than personally appearing on behalf of his client, is controlling. This fact should not influence our judgment for our duty is to apply general principles of law to specific cases and not tailor them to fit a preconceived result, desirable as that result might seem.

We thus come to the final question: Did the Court err in granting judgment in favor of the defendant Douglas and against the defendant Cleveland for attorney's fees? We think that this was an error.

The agreement dissolving the Douglas-Cleveland partnership provides in part as follows:

"Paragraph 11. Second party further covenants and agrees that second party does hereby assume each and every, all and singular, every debt, claim and demand of every nature whatsoever, liquidated, unliquidated, known or unknown, heretofore and to the date hereof existing by reason of the conduct of any and all business of the said Douglas-Cleveland General Agency, and does hereby agree to indemnify and save harmless first party of and from any and all liability, claim, demand, damages or expenses for and on account thereof."

Without doubt, the terms of this indemnity agreement are broad enough to include attorney's fees, and we feel that such interpretation is consistent with the intent of the parties, as revealed to us, for the agreement purports to offer complete indemnity to Douglas for any expense that might arise from any claim, demand or liability asserted against him as a result of the partnership activity. We feel that attorney's fees would be properly included as an item of expense.

This, however, is not the crux of the problem, for defendant Douglas was, in fact, tendered the services of an attorney. The question, then, is whether Douglas was justified in declining the services of Cleveland's attorney and employing his own.

There is some suggestion that the reason for employing independent counsel was a conflict of interest existing between the two defendants, and that animosity had arisen between Douglas on the one hand and Cleveland and his attorney on the other. If there was, however, a conflict in the interests of the defendants, Douglas should not have been required to accept the services of Cleveland's attorney. A careful examination of the record, however, fails to disclose that any actual conflict existed. Certainly, it did not exist by virtue of the complaint filed by the plaintiff insurance company, for that action was directed against both defendants, and sought to hold them, jointly and severally, on the claimed indebtedness. Their defense was identical; their primary interest to escape

liability was identical. The record reflects no defense that was asserted by Cleveland that did not apply equally to Douglas. In this respect, then, we find no conflict of interest.

It is suggested, however, that because Douglas asserted a cross-complaint against Cleveland, their interests then became opposed. Ordinarily this would be true, but in the present case we find no indication that Cleveland was either attempting to escape liability at the expense of Douglas, or that he was attempting to require Douglas to share in any possible liability.

In effect, all that the cross-claim demanded of Cleveland was that he be responsible to Douglas for any judgment that might be rendered against Douglas as a result of plaintiff's complaint. This Cleveland had already agreed to do. Under these circumstances we do not believe the employment of separate counsel was reasonably necessary, as we understand the law to require, for under the interpretation urged by Douglas virtually any indemnitor could be required to pay for independent counsel upon the theory that a cross-claim for indemnity would lie. We feel that such a construction would torture the intent of the indemnity contract, and this Court will not presume that an indemnitor will not abide by the terms of his agreement.

To be sure, had Cleveland declined to take any action which would protect the interests of Douglas, we feel that Douglas should not be required to sit idly by as a mere spectator to his own destruction. Fidelity & Casualty Company of New York v. Mauney, 273 Ky. 400, 116 S.W.2d 960; Hartford Accident & Indemnity Co. v. Dahl, 202 Minn. 410, 278 N.W. 591; City of Ft. Scott v. Penn Lubric Oil Co., 122 Kan. 369, 252 P. 268. The rule to be drawn from these cases, however, is that if the indemnitor has knowledge of the pendency of the proceeding but refuses to defend, and the indemnitee in good faith incurs legal expenses in defending the litigation, then such expense is chargeable to the indemnitor. Such a situation would render these expenses reasonably necessary. Such is not the situation with which we are confronted here, for here the indemnitor has proffered counsel to Douglas without cost to him. Doubtlessly, Douglas has the right to decline such services, but if he does so, he then should be required to bear the expenses of separate counsel.

It is therefore, ordered: That the judgment of the trial Court against the plaintiff, on its complaint, be affirmed; and that the judgment of the trial Court in favor of the defendant Cleveland and against the plaintiff, in the amount of $75, be reversed and that the judgment of the trial Court in favor of the defendant Douglas against the defendant Cleveland, in the amount of $500, be reversed, with di-

rection to enter judgment in accordance with this opinion.

PHELPS, C. J., and UDALL, JOHNSON and BERNSTEIN, JJ., concur.

Justice STRUCKMEYER having disqualified himself, the Honorable FRANK E. THOMAS, Judge of the Superior Court, Cochise County, was called to sit in his stead and participate in the determination of this appeal.