442 P.2d 88

**FARM & AUTO SUPPLY, an Arizona corporation, doing business as Farm Service & Auto Supply, and Donald W. Harvey and Ethel N. Harvey, doing business as Farm Service & Auto Supply, Appellants,**

v.

**PHOENIX FUEL CO., Inc., an Arizona corporation, Appellee.**

**No. 8558.**

Supreme Court of Arizona,

In Banc.

June 12, 1968.

Herbert Mallamo, Phoenix, for appellants.

Cox & Cox, by Alfred S. Cox, Phoenix, for appellee.

**McFARLAND, Chief Justice:**

Plaintiff-appellee, Phoenix Fuel Co., Inc., a corporation, sued defendant-appel-

lant, Farm & Auto Supply, a corporation, for over eleven thousand dollars, stating that its complaint was on "open account," and alleging that defendants owed plaintiff the money for "goods sold and delivered according to the account annexed as exhibit 'A'." After plaintiff garnisheed several parties, defendant paid the account in full. The parties then stipulated that the action should continue solely to dispose of two questions: (1) whether defendant was liable for attorney's fees, and, if so, how much, and (2) whether defendant was liable for the costs of the action, including the cost of serving process on all defendants. The case was tried before a judge, sitting without a jury, and plaintiff was awarded judgment for $212.85 costs and for $3,816.74 attorney's fees. Defendant appealed.

Plaintiff's proof is inconclusive on nearly every point, and it is therefore difficult to determine on what facts the lower court based its judgment.

Plaintiff was a wholesaler of petroleum products. Defendant had one or more tank trucks and purchased plaintiff's products regularly over a period of a year and a half; delivery was always made into defendant's truck at plaintiff's place of business. The original contact with defendant was made by plaintiff's salesman, who appears to have made arrangements for the sales to be made on credit. Plaintiff carried as an account receivable, an open account to which he posted each sale to defendant. Defendant's truck would enter plaintiff's yard, and the driver would do his own loading. He would then enter plaintiff's office and tell the bookkeeper what he had loaded, and the latter would make out an invoice which the driver would then sign, after which it would be posted to defendant's account owing to plaintiff.

At the trial, plaintiff introduced in evidence Exhibit 2, which it stated were all of the invoices pertaining to defendant's account. These consisted of 174 printed forms each entitled "invoice," dated, and reading "Sold to"; followed by a blank in which defendant's name had been inserted. Each invoice had a blank space filled in with the description, quantity, price, and total amount of the purchase. Each had a line for the customer's signature. 37 invoices, totalling nearly $7,000, *were not signed by any one* on the lines for customer's signature; 137 invoices, totalling approximately $38,000, had assorted signatures of: "Jerry," "James J. Hill," "Pliad Watt," "D. Dallas Hyde," "W. G. Vaughn," "D. Brown," etc. 74 of these invoices have printed on their faces:

> "Customer agrees to pay 8% interest and all costs, including reasonable attorney fees, if legal action becomes necessary."

while one hundred bear the following statement:

> "If account unpaid within time permitted, customer agrees to pay 8% interest and all costs of collection including reasonable attorney fees."

■ We see no problem with plaintiff's recovery of costs. Since defendant paid the account in full only after the action was started, it is liable for costs. If the issue referred to in the stipulation is whether those costs should include the expense of serving process by private process-servers, the authority for including the cost of process serving by private process servers is found in A.R.S. § 11–445, subsec. F:

> "* * * However, a party adjudged entitled to recover his costs of suit in any civil action shall be awarded in any such judgment or order for the costs of service made by a private process server only the amount actually charged the party by such private process server or the amount which a sheriff or constable would have been authorized to

charge the party for the same service, whichever is less, except that an additional allowance shall be made of fifty cents for the notarization of each affidavit of service made by a private process server. As amended Laws 1962, Ch. 139, § 1; Laws 1963, Ch. 3, § 2."

■ The remaining question is whether defendant is liable for attorney's fees. In Commercial Standard Insurance Company v. Cleveland, 86 Ariz. 288, 345 P.2d 210, we affirmed a long-standing rule that

"It is fundamental * * * that attorney's fees are not recoverable in an action unless provided for by contract or statute."

The evidence indicates that some form of agreement was made as to price and terms of payment, between plaintiff's salesman and defendant, prior to delivery of the goods in question, and that they were thereafter sold and delivered on open account in accordance with such an agreement. Defendant certainly did not agree to buy from plaintiff without some assurance of a price or of a method for ascertaining the price, and it seems to have been admitted that the sales were to be made, and were actually made, on credit. Therefore, it may be said that the parties, before any purchases were made, had created a situation where the seller had made an offer for a series of contracts at a mutually-agreeable price. The burden is upon the party attempting to show that such agreement included a promise to pay attorney's fees, and not upon defendant. If he has failed in this respect he must fail in the lawsuit. The evidence does not show that when this agreement was made there was even any discussion of attorney's fees.

Plaintiff, having failed to show agreement to pay attorney's fees, seeks to fill this gap by claiming that the invoices contained in Exhibit 2 are individual contracts, providing for the payment of at-

torney's fees, signed by defendant's agents. In support of this argument it cites two cases: Slim Olson, Inc. v. Winegar, 122 Utah 180, 246 P.2d 608; and Braun v. S. F. Hess & Co., 187 Ill. 283, 58 N.E. 371.

In Olson, supra, defendant personally signed 47 invoices, and the court said that he did so "without protest on his part," and that:

"To conclude that there was no manifestation of assent by defendant to be bound by his own acts or those of his servants in such an atmosphere of non-protestation and non-disclosure, would be to arrogate to this court the privilege of ignoring the record and of supplying defendant and his case with belief and understanding undisclosed, quite unsupported by any evidence. We believe and hold that under the facts there was no error in concluding that Winegar, by personal signature *accompanied by silence* as to his acts and those of his employees, bound himself to pay attorney's fees,—under simple principles of contract and of ratification of agents' acts by failure to speak up. Such being our conclusion, matters of actual or apparent authority need not be canvassed." [Italics ours.]

It will be noted that the court based its opinion largely on the fact that Winegar had personally signed 47 of the invoices, and for this reason the court did not go into the question of apparent authority of employees to so sign. Olson, supra, is not in point with the instant case because the facts are different. In the instant case none of the invoices was signed by defendant, many were not signed at all, and there was an absence of proof that defendant had any personal knowledge of the contents of the invoices.

■ Braun v. S. F. Hess & Co., 187 Ill. 283, 58 N.E. 371 (1900), the second case cited, is not in point. In that case the invoices were sent to defendant at

the time the goods were shipped, and on them appeared the following:

" * * * 'Bills bear interest after maturity, and are subject to sight draft;' also the words, 'Terms, sixty days; two per cent. discount for cash within ten days.' * * * "

The court, in holding defendant liable for interest, stated:

" ' * * * There is no evidence of any express agreement in regard to the time when the goods should be paid for, nor in regard to the time when interest should begin to run. We are of the opinion that the instruction was correct. In the absence of any agreement, the price of the goods would be payable on delivery. The parties could make any agreement about it that they chose to make. If the plaintiff notified the defendant that it was willing to give him a credit of thirty days on each bill, and that the price would be payable at the expiration of that time, it was a proposition in the defendant's favor, and if he made no objection his assent would be implied, and he would be bound by the contract.' We think that the court did not err in instructing the jury to find for appellee, unless the defense set up in the plea of set-off was sustained."

It will be noted that the court based its decision largely upon the fact that under the law the invoices were payable upon delivery of the goods, the extension of the time was in defendant's favor, and since he made no objection, assent would be implied. In other words, taking advantage of the extension by failure to make payment when the goods were delivered were acts which constituted the assent to the agreement. We do not have similar facts in the instant case. The original agreement provided for credit. There was no basis on which it could be held that the failure to act was an acceptance of the

printed matter upon the invoices, particularly in the absence of proof of actual knowledge by defendant of the provisions in regard to attorney's fees contained in the invoice, and in the absence of proof that those who signed the invoices had authority to modify the previous agreement or to make a contract binding defendant to pay attorney's fees.

While there is authority (discussed infra) holding that silence in regard to provisions contained on invoices where the party receiving the goods has knowledge of its contents, is not binding upon the buyer, we are not called on to pass upon this question in the instant case, because it was not proved that defendant had any personal knowledge of the provisions on the invoices in regard to attorney's fees.

Under any theory of the law the question of whether silence would amount to assent to the provisions contained on an invoice would depend upon the agreement, and upon the facts surrounding the transaction in each individual case.

In the instant case the evidence shows that defendant was permitted to serve himself, and, after the truck had already been filled, the driver went to plaintiff's bookkeeper and was given an invoice for the number of gallons taken. Each time defendant picked up some product it would become obligated to pay the agreed price and on the agreed terms. At this point there was no agreement to pay any attorney's fees, and no claim is made for such fees except insofar as the invoices, written after each purchase, constitute written contracts to such fees.

An invoice is "an account or catalogue of goods, with the value, marks, or particular description thereof annexed; a list of goods sold and the prices charged for them * * * " State v. Standard Oil Co. of Indiana, 222 Iowa 1209, 271 N.W. 185.

An invoice "is not a bill of sale, nor is it evidence of a sale. It is a mere

detailed statement of the nature, quality, and cost or price of the things invoiced \* \* \*" Dows v. Natl. Exch. Bank, 91 U.S. 618, 630, 23 L.Ed. 214.

An invoice is a business device, generally issued in duplicate, with a copy for the buyer and one for the seller. It is designed to expedite the bookkeeping of both the buyer and the seller. The seller's bookkeeper gets one copy and uses it to record in the seller's books, the amount which the buyer is obligated to pay; the buyer's bookkeeper gets the other copy and uses it to record in the buyer's books the amount which the buyer owes the seller for the purchase. The invoices have other uses—such as to keep track of the quantities bought and sold for cost-accounting purposes, for excise-tax reports, etc. It is very possible that no one in the buyer's employ saw the invoices, other than the bookkeeper who was interested only in the dollar amounts.

The burden of proving a written contract is on the seller, since it is the party who seeks to collect the attorney's fees. In order to modify the prior offer for a series of unilateral contracts, it is necessary that both parties agree to the modification. It is necessary that the seller *intend* to make an offer to modify, and that the buyer *intend* to accept such an offer.

We approve the reasoning in Tanenbaum Textile Co. v. Schlanger, 287 N.Y. 400, 40 N.E.2d 225. In that case there was a series of sales arranged by telephone. In no case was arbitration of disputes mentioned. The sales were accompanied or followed by invoices on which was stamped in red ink, "All controversies arising from the sale of these goods are to be settled by arbitration." Buyer received and retained the invoices. The court stated:

"The reason for the decision *made below* is phrased as follows: 'The courts have frequently held that a party by receiving and retaining without objection, under certain circumstances, a written contract signed by the other party, may be held bound by the terms of such writing, though he himself has not signed. \* \* \* The invoices included all the terms of the completed contracts. They completely evidenced the agreements which were fully consummated by the parties, except for compliance with the provision concerning arbitration.' *We take another view.* "It is true that acceptance of a document *which plainly purports to be a contract* gives rise to an implication of assent to its terms despite ignorance of the content thereof. \* \* \* But that is not this case. *An invoice, as such, is no contract.* An invoice is a mere detailed statement of the nature, quantity and the cost or price of the things invoiced. \* \* \*

"Each of the transactions in question was executed in accordance with an agreement that had been made, without mention by either party of the subject of arbitration. It was not until that stage had been reached in each instance that the invoice was made out and stamped with the words 'All controversies arising from the sale of these goods are to be settled by arbitration.' *The whole question is thus one of the effect of Schlanger's silence in the face of such separate offers for arbitration, each of which looked back to a single sale and delivery theretofore made.*

"The applicable principles have been stated by this court in this manner: 'A party cannot be held to contract where there is no assent. Silence operates as an assent. Silence operates as an assent, and creates an estoppel, *only when it has the effect to mislead.* \* \* \* When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings, and misleads another, then his silence may be deemed to be acquiescence. \* \* \* And it may be added that *a person is under no obligation to do or say anything concerning a proposition which*

*he does not choose to accept.* * * * There must be actual acceptance, or there is no contract.' * * * Tested by these standards, the case for the Tanenbaum Company, in our judgment, fails to meet either letter or spirit of the explicit command of the statute that, 'A contract to arbitrate a controversy thereafter arising between the parties must be in writing.' " [Italics ours.] See also Joseph B. Cooper and Son, Inc. v. Finlay Departments, Inc., 11 Misc.2d 382, 174 N.Y.S.2d 265.

In the case of India Paint & Lacquer Co. v. United Steel Products Corp., 123 Cal.App.2d 597, 267 P.2d 408, the court held:

> "Where, as in the case at bar, sales transactions are entered into on the basis of anterior warranties, it is universally held that an attempt to disclaim the binding effect of such warranties upon or after delivery of the goods, by means of language on an invoice, receipt or similar notice, is ineffectual unless the buyer assents or he is charged with knowledge of nonwarranty as to the transactions. [Cases cited.]"

We hold that where none of the invoices containing provisions in regard to attorney's fees are signed by the buyer, and it is not proved that employees who signed the invoices had authority to make such an agreement in regard to attorney's fees, the mere signing by such employees of some of such invoices, does not constitute a binding contract of the buyer to pay attorney's fees as provided in the invoices.

Judgment reversed, and case remanded with instructions to eliminate plaintiff's judgment for attorney's fees.

UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ.

NOTE: Justice LOCKWOOD, having disqualified herself, did not participate in the determination of this appeal.