494 P.2d 1347

**Lydle HIETT and Hazeldell Hiett, his wife, Appellants,**

v.

James HOWARD, Appellee.

No. 1 CA–CIV 1214.

Court of Appeals of Arizona,
Division 1, Department B.

March 20, 1972.

Cavness, DeRose, Senner & Rood, by John W. Rood, Phoenix, for appellants.

Vern E. Gasser, and William A. Harrell, Phoenix, for appellee.

EUBANK, Judge.

This appeal involves the sale and lease of a tavern, the refusal of the Department of Liquor Licenses and Control to approve the transfer of the liquor license from the sellers to buyer, and the consequences flowing therefrom.

On October 7, 1967, appellants-defendants, Lydle Hiett and Hazeldell Hiett, as sellers, entered into a sales agreement with appellee-plaintiff, James Howard, as buyer, for the sale of a liquor business known as "Duffy's Tavern" located in Phoenix, Arizona, together with the transfer of a No. 6 liquor license used in connection with this business. The sales agreement envisioned a lease of the premises occupied by the business, ". . . for a period from October 7, 1967, through October 6, 1968, at a monthly rental of TWO HUNDRED FIFTY DOLLARS ($250.00).", and a sale by sellers of the business, including transfer of the license, for $30,000 to the buyer. The purchase price was to be evidenced by a promissory note, in that amount, and secured by a chattel mortgage on certain fixtures passing by the sale. An earnest money deposit in the sum of $1500, called for by the sales agreement, was deposited with an escrow agent who was instructed in what manner to deal with that sum upon the happening of certain contingencies. On the same date as the sales agreement, a lease, a promissory note and a chattel mortgage were executed by the parties. All of these agreements, however, were made contingent upon,

". . . the approval of the transfer of the spirituous liquor license by the proper governmental authorities of the City of Phoenix and State of Arizona, and it is specifically understood and agreed that in the event that the approval of such transfer shall be denied by any of such authorities, then and in such event, this transaction shall be deemed cancelled and held for naught, and the Escrow Agent shall forthwith return all documents received by him to each of the parties who delivered the same to him, and the possession of such premises and business shall be returned to Seller. . . ."

The agreement further provided that upon disapproval of the liquor license transfer,

". . . such amount which may remain of the earnest money deposit held by the Escrow Agent shall be divided between the parties in accordance with their respective interests. In the event such transfer is denied *because of any act or omission on the part of the Purchaser*, the Escrow Agent shall deliver such sum remaining in his possession from the FIFTEEN HUNDRED DOLLAR ($1500.00) earnest money deposit to the Seller as liquidated damages." (Emphasis supplied)

With the preliminary approval of the Department of Liquor Licenses and Control, plaintiff was allowed to take over control of the business prior to processing the approval or disapproval of the transfer of the license to him, this "takeover" occurring on October 17, 1967. It further appeared that since the business had not been operated for some time prior to the sale due to the widening of the street upon which it was located, several repairs were necessary to place the premises in a condition to reopen. Upon taking possession of the premises, the plaintiff made several repairs, the extent of which and the workmanship involved being a matter of dispute between the parties.

Contrary to the sales agreement, which envisioned a twelve-month lease at $250 per month for a total annual rental of $3000, the lease agreement executed by the parties stated an annual rental of $2325,

payable $75 on December 7, 1967, and the sum of $250 on January 7, 1968, and a like sum on the 7th day of each month thereafter with the term of the lease to expire on October 6, 1968.

On December 20, 1967, the plaintiff was advised by the Department of Liquor Licenses and Control that the application to transfer the liquor license had been disapproved, on the grounds that, "You have not made a satisfactory showing of your capabilities, reliability and qualifications."

After receipt of a copy of this notification, the defendants, after several attempts to locate the plaintiff, retook possession of the premises on December 23, 1967, counted the cash on hand, inventoried the stock in trade, and continued operation of the tavern.

Approximately five months later plaintiff filed suit against the defendants seeking damages for the unlawful reentry of the premises, the value of repairs on the premises, the value of the stock in trade and cash left in the business, the sum of $1200 allegedly left in a floor safe at the tavern when defendants retook possession, and the return of earnest money deposited in the sum of $1500, together with punitive damages.

The matter was tried to a jury, which returned a verdict in favor of plaintiff for $4500 compensatory damages and $5000 punitive damages. A subsequent hearing before the trial court resulted in an award to plaintiff of attorney's fees in the sum of $1,917.50. Following a denial of defendants' post-trial motions, defendants appealed the judgment entered in conformity with the jury's verdict and the findings of the trial court on attorney's fees.

Defendants have submitted several alleged errors of the trial court, the most important of which are as follows:

(1) whether the reentry by appellants was wrongful;

(2) whether defendants were wrongfully excluded from cross-examining plaintiff and introducing evidence as to alleged acts occurring prior to October 7, 1967 which led to the refusal of the Department to transfer the liquor license;

(3) whether the award of punitive damages was properly supported by the evidence, and

(4) whether plaintiff was entitled to attorney's fees.

Appellants first contend that they were guilty of no misconduct in reentering the leased premises following notice of the disapproval of the transfer of the liquor license to plaintiff, relying upon the express terms of the sales agreement. Plaintiff counters this contention with the argument that until his right to appeal the ruling of the Department granted by A.R.S. § 4–211 had expired (30 days), the defendants had no right to possession. The trial court in conformity with plaintiff's arguments, instructed the jury concerning plaintiff's right to appeal the ruling of the Department denying transfer of the liquor license.

A.R.S. § 4–211, subsec. A reads as follows:

"A. Any decision of the board in any manner shall be final, unless any person aggrieved . . . within thirty days after receiving notice of the decision of the board, appeals to the superior court. . . ."

There is no dispute that the denial of the transfer of the liquor license was the decision of the Board. The decision of the Board by the terms of the statute became final upon entry and we therefore conclude that pursuant to the terms of the agreement of sale between the parties, appellants had the right to reenter and retake possession of the premises in question, subject to that reentry being held unlawful following the filing of an appeal and a reversal of the Department's decision.

Plaintiff argues, however, that it would have been futile for him to exercise the right of appeal once the premises had been retaken. On the contrary, we find an appeal, if successful, would have confirmed plaintiff's right under the agreement and

therefore such an appeal would not be futile. However, we do note that such an appeal was necessary for the plaintiff to preserve such right under the written agreement in order to suspend the finality of the Board's decision and having failed to exercise this right, the defendants' right to reenter also became final. In our opinion the instruction that was given by the trial court permitted the inference to be drawn that the defendants were not entitled to take possession of the premises and also that they in some way interfered with plaintiff's right of appeal. The giving of such an instruction was erroneous and prejudicial to the defendants and allowed the jury to consider and speculate upon improper matters.

■ Having determined that defendants' right to reenter the premises was proper, plaintiff's claim for attorney's fees must also fail. Paragraph 3 of the *lease agreement* provides, in part:

> "That in the event an action be brought by either party against the other *concerning any of the provisions hereof,* the prevailing party in such action shall be entitled to recover reasonable attorneys' fees incurred thereby. . . . ." (Emphasis supplied).

We note that by the express terms of this agreement only an action brought upon the lease will support a claim for attorney's fees. The only claim plaintiff had, insofar as the lease was concerned, was a breach of the covenant of peaceable possession. By our opinion herein, we have held that defendants had a lawful right to reenter and therefore could not have breached this covenant. The plaintiff then is not the "prevailing party" and hence, he cannot claim attorney's fees for this alleged breach. In our opinion the balance of plaintiff's claim against defendants for labor and materials, for stock in trade, and cash left on the premises sounds *in quantum meruit* for "money had and received" rather than for a breach of the lease. As to these items, defendants did not agree to pay attorney's fees for their collection and therefore the awarding of attorney's fees as to

this portion of plaintiff's claim is improper. Farm & Auto Supply v. Phoenix Fuel Co., 103 Ariz. 344, 442 P.2d 88 (1968); Commercial Standard Insurance Co. v. Cleveland, 86 Ariz. 288, 345 P.2d 210 (1959). Also plaintiff's contention that he is entitled to a return of the $1500 earnest money deposit arises out of the agreement of sale, which contains no provision for the payment of attorney's fees for an action based thereon. *See,* Crosby v. Smith, 13 Ariz. App. 243, 475 P.2d 728 (1970). The award of attorney's fees was error.

Defendants next contend that they were improperly denied the opportunity to present to the jury the question of whether the decision of the Department of Liquor Licenses and Control, in refusing the transfer, was based upon "any act or omission" of the plaintiff. Plaintiff's application to the Department stated that he had no felony convictions and only one prior traffic citation. In this regard defendants called Col. Harold H. Moore, Superintendent of the Department, and through him offered to prove that Col. Moore's investigation, contrary to plaintiff's sworn application, revealed that prior to October 7, 1969, plaintiff had received numerous convictions arising out of drinking and that his credit rating was bad. Further, that based upon this investigation, Col. Moore had recommended to the Liquor Board that the application for transfer of the license be disapproved. The trial court disallowed such testimony from being presented on the grounds that the "acts or omissions" referred to on the part of the plaintiff in the sales agreement were only "acts or omissions" occurring after the date of the sales agreement—October 7, 1969. On this issue the trial court also instructed the jury:

> "And I charge you ladies and gentlemen of the jury that the phrase 'acts or omissions' when it occurs in the contracts, means only acts or omissions which occurred in the future after the contracts were signed."

■■ Both as to the reason for excluding the evidence and the giving of the in-

struction to the jury, the trial court was in error. The intent of the parties to a contract, if possible, must be ascertained from the four corners of the document. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944); Kirkeby-Natus Corp. v. Kramlich, 12 Ariz.App. 376, 470 P.2d 696 (1970). Moreover, in construing a provision of a document, that provision must be read in connection with all other provisions of the instrument. Miller Cattle Co. v. Mattice, 38 Ariz. 180, 298 P. 640 (1931); Kirkeby-Natus Corp. v. Kramlich, *supra*. In applying these rules of construction to the provisions of the sales agreement that, " . . . In the event such transfer is denied because of any act or omission on the part of the Purchaser. . . . ", it is obvious to us that the "transfer" referred to is the transfer by the Department of Liquor Licenses and Control of the No. 6 liquor license from the defendants to the plaintiff. It is further obvious that the "denied because of any act or omission on the part of the Purchaser" refers to reasons given by the Department of Liquor Licenses and Control for refusing the license transfer.

Applying this construction to the language employed, it must have been the intent of the parties that the "acts or omissions" considered by the Department in arriving at its refusal to transfer the license must be controlling, regardless of whether these "acts or omissions" occurred prior to the date of the sales agreement or subsequent thereto. The trial court, by limiting the jury's consideration to events occurring only after the date of the execution of the agreement, in determining whether the Department in denying the transfer considered "acts or omissions" of the plaintiff, deprived defendants of the opportunity to introduce evidence going to this issue and thereby committed reversible error.

The plaintiff, on appeal, in an attempt to justify the court's ruling excluding Col. Moore's testimony, argues that Col. Moore was not a proper witness to testify as to the reasons the Department denied the transfer. This argument is based on the fact that at that time Col. Moore had no power to allow or disallow a transfer, this power being vested in the Liquor Board alone, and therefore only a member of that Board would be qualified to testify as to the reasons given in refusing the transfer.[1] Assuming Col. Moore was not qualified to testify in this regard, his testimony being hearsay, the court's ruling had the effect of not only excluding his testimony, but also excluding the defendants from cross-examining plaintiff as to his conduct prior to October 7, 1967, or offering other evidence. This deprived defendants of the opportunity to show to the jury that the reasons given by the Department for disallowing the transfer—plaintiff not making "a satisfactory showing of his capabilities, reliability and qualifications"— was based upon "acts or omissions" of the plaintiff occurring prior to October 7, 1967, and as such still constitutes reversible error.

The defendants next argue that there was not sufficient evidence to support an award of punitive damages and therefore that this question should not have been submitted to the jury. Plaintiff alleges that the conduct of the defendants was enough to warrant an award of punitive damages.

It is the rule that punitive damages are awarded to punish a defendant for gross, wanton, malicious and oppressive conduct. Iaegar v. Metcalf, 11 Ariz. 283, 94 P. 1094 (1908); Jenkins v. Skelton, 21 Ariz. 663, 192 P. 249 (1920); Acheson v. Shafter, 107 Ariz. 576, 490 P.2d 832 (1971).

We have held that the defendants had a right to reenter and take possession of the premises under the lease when they

---

1. Although it was not directly raised, the parol evidence rule extends to judgments and to administrative rulings, 30 Am. Jur.2nd, Evidence, § 987, 1027 (1967 ed), as does the doctrine of *res judicata*. Martin v. Industrial Commission, 4 Ariz.App. 547, 422 P.2d 178 (1967).

received notice that the transfer of the liquor license was denied. Plaintiff urges that punitive damages flow from the retaking of the premises and the retention of his personal property. Plaintiff's damages, as we have held, do not flow from the breach of the sales agreement, his action being one for the alleged value of the inventory, the personal property alleged to have been present, the alleged value of the repairs and for the return of his earnest money deposit. The record shows that on each of these items there was a legitimate dispute of fact. That the defendants did not convince the jury of the justice of their position so as to result in a verdict in their favor does not entitle the plaintiff to an award of punitive damages. Our review of the record does not disclose evidence of the type of conduct by the defendants which the law seeks to inhibit by awarding punitive damages and it was therefore error for the trial court to submit that question to the jury.

 Plaintiff urges that since no objections to the instructions on punitive damages were lodged until after the jury had retired for deliberation, the objections were not timely and cannot be raised in support of this appeal under Rule 51(a), 16 A.R.S., Arizona Rules of Civil Procedure. The record indicates that during the settling of the instructions the trial judge and the attorneys for the parties agreed that the attorney for the defendants would be permitted to make a record of his exceptions to the instructions after the jury retired. Although we do not approve of this procedure, this Court has ruled that the procedure is sufficient compliance with the rule under limited circumstances. Valentine v. Faulkner, 12 Ariz.App. 557, 473 P.2d 482 (1970).

The defendants further attack the sufficiency of the evidence to justify the award of compensatory damages in this matter. Since our opinion requires a reversal of this action and a remand for further proceedings, the errors alleged by the defendants and the sufficiency of the evidence, need not be passed upon in this opinion.

For the foregoing reasons the judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.

HAIRE, P. J., and JACOBSON, J., concur.