GEORGE S. McCANDLESS, PLAINTIFF, v. WILLIAM P. RIGGIN, ADMINISTRATOR OF THE ESTATE OF JOSIAH S. NEWCOMB, DECEASED, AND JOSEPH F. BRADWAY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 13, 1961.

*Mr. David L. Horuvitz,* attorney for plaintiff.

*Messrs. Rogovoy & Porreca,* attorneys for defendant William P. Riggin, administrator of the estate of Josiah S. Newcomb, deceased (*Mr. Nathaniel Rogovoy,* appearing).

*Messrs. Lloyd, Horn, Megargee & Steedle,* attorneys for defendant Joseph F. Bradway (*Mr. John Lloyd,* appearing).

WICK, J. S. C. This matter comes before the court upon the motion of defendant William P. Riggin, administrator of the estate of Josiah S. Newcomb, deceased, for summary judgment upon the demand set forth in paragraph (d) in his cross-complaint against defendant Joseph F. Bradway.

By paragraph (d) of the cross complaint defendant Riggin seeks judgment "That the defendant Joseph F. Bradway be ordered to pay the costs and counsel fees of the defendant William P. Riggin, Administrator of the Estate of Josiah S. Newcomb, deceased in these proceedings." In support of this demand, the defendant Riggin relies upon the agreement of December 19, 1959 between himself and defendant Bradway which provides as follows:

"6. The party of the first part has agreed to sell, assign and set over six hundred sixty-four (664) shares of Preferred Stock and four hundred (400) shares of Common Stock of the Central Canning Company, Inc., a corporation of the State of New Jersey, to George McCandless, or his nominee, for the sum of Twenty-five Thousand ($25,000) Dollars, providing payment is made by the said George McCandless, or his nominee, to the party of the first part within sixty (60) days of the date hereof, and the party of the fourth part hereby recognizes said commitment and agrees to perform, and *further agrees to save the party of the first part harmless in the premises.*" (Emphasis supplied)

The defendant Bradway (hereafter referred to as the indemnitor) is the party of the fourth part, and defendant Riggin (hereafter referred to as the indemnitee) the party of the first part.

The indemnitee contends that the last phrase of the above cited agreement as a matter of law obligates the indemnitor to pay his counsel fees and costs. As authority for such an interpretation, the indemnitee cites the case of *Thermoid Co. v. Consolidated Products Company, Inc.,* 7 *N. J.* 283 (1951). In that case the Supreme Court of

New Jersey held that the provision "We will hold you harmless from any such claim" includes both counsel fees and costs incurred by the indemnitee in successfully defending a claim for which the indemnitor would be ultimately liable. In so holding, Chief Justice Vanderbilt, speaking for the court, 7 N. J., at *pages* 289–290 said:

"The defendant also claims that the liability for the payment of costs and counsel fees was not within the express or implied terms of the indemnity contract. It is asserted that an indemnity agreement is to be strictly construed, and that the words 'We will hold you harmless from any such claim' do not include any legal expenses that the plaintiff might be put to in defending an action for commissions. Again it seemed that the trial court was correct in examining into the facts and circumstances surrounding the execution of the indemnity contract as disclosed by the stipulation of facts entered into by the parties. There it is clearly revealed that the plaintiff's intent was to receive $400,000 free and clear from the sale to the defendant, for it could have received that amount from a sale to a third party. It was to counteract this offer from a third party that the defendant was willing to make the indemnity agreement. The parties must have contemplated at the time that there was a likelihood that Alumbaugh would put in a claim for brokerage fees, that the claim would be without justification, and that expenses would be entailed in defending a suit. This is further borne out by the fact that the defendant encouraged the plaintiff to defend the action brought by Alumbaugh, when it might well have permitted judgment to have been taken against it for the claimed brokerage fee of $25,000 without incurring any legal expenses and then to have recovered that amount from the defendant. The plaintiff's action in defending the Alumbaugh suit was thus for the benefit of the defendant alone, and it is only reasonable that the parties in using the words 'We will hold you harmless from any such claims' contemplated the expenses of defending such a suit as well as the possibility that a judgment for brokerage fees might have gone against the plaintiff."

The above quotation amply shows that there are important factual differences between the case now under consideration and the *Thermoid* case. As Chief Justice Vanderbilt carefully noted in the *Thermoid* case, the defendant indemnitor encouraged the plaintiff indemnitee to defend the action brought by the broker, and by the indemnitee successfully so doing, the indemnitor was saved from lia-

bility under the indemnity agreement for the full amount of the broker's claim. Thus, in the *Thermoid* case, the actions of the plaintiff indemnitee in defending the suit were solely for the benefit of the indemnitor. In the facts herein, the indemnitor neither encouraged the indemnitee to engage separate counsel in this litigation nor did the indemnitee by so doing act for the benefit of the indemnitor. In fact, the indemnitee has consistently, from the time he first entered this litigation until the present, taken a position antagonistic to that of the indemnitor. In view of these differences, the court must distinguish the case at bar from the *Thermoid* case.

However, an analogous factual situation is found in *Commercial Standard Insurance Co. v. Cleveland,* 86 *Ariz.* 288, 345 *P. 2d* 210 (*Sup. Ct.* 1959). In that case the indemnitor, upon acquiring the assets and assuming the liabilities of a partnership subsequently dissolved, agreed with his partner "to indemnify and save harmless [M. W. Douglas] from any and all liability, claim, demand, damages or expenses for and on account thereof." An action was brought upon a claim against the partnership, naming both the indemnitor and indemnitee jointly and severally as party defendants. The indemnitee refused the services of the indemnitor's attorney and instead engaged separate counsel. The Supreme Court of Arizona denied the indemnitee recovery of the counsel fees and costs incurred by him in employing separate counsel. In so holding, the court stated that the indemnitee has the right to decline the services of the indemnitor's attorney, but if he does so in the absence of real conflict of interest between the indemnitee and indemnitor, he will be required to bear the expense of separate counsel himself.

The rationale used by the Arizona court is very persuasive to this court. There is no reason why the indemnitee herein had to engage separate counsel in this litigation, for by the agreement of December 19, 1959 the indemnitee was protected from any loss which might arise from this transaction. This indemnity would also include any expense

or loss suffered by him if specific performance of the agreement of sale, as sought by the plaintiff, was denied because of the indemnitor's defenses and a later sale of these assets brought a lower price than that contracted for here. Thus the indemnitee, by employing separate counsel and taking the position he did, acted solely on his own behalf and thus should be responsible for his own fees and costs.

Accordingly, the motion for summary judgment in favor of the indemnitee, William P. Riggin, on the cross complaint against the indemnitor, Joseph F. Bradway, must be denied.