IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Plaintiff/Appellee,*

*v.*

KAREN EGAN FRANK, *Defendant/Appellant*.

No. 1 CA-CV 23-0282
FILED 3-21-2024

---

Appeal from the Superior Court in Maricopa County
No.  CV2021-019129
The Honorable Joan M. Sinclair, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Hill Hall & DeCiancio PLC, Phoenix
By Joel DeCiancio, Christopher Robbins
*Counsel for Plaintiff/Appellee*

Mick Levin PLC, Phoenix
By Mick Levin
*Co-Counsel for Defendant/Appellant*

Erlichman Law Firm, Phoenix
By Joseph Erlichman
*Co-Counsel for Defendant/Appellant*

---

**OPINION**

Judge Michael S. Catlett delivered the opinion of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

---

**C A T L E T T**, Judge:

¶1        This case involves two insurance policies.  Karen Frank and State Farm Mutual Automobile Insurance Company ("State Farm") are party to both.  One is an automobile policy ("Auto Policy"), the other is a personal liability umbrella policy ("Umbrella Policy"); both policies include underinsured motorist ("UIM") coverage.  Another driver rear-ended and injured Frank but failed to cover her purported damages.  Frank made a UIM claim under both policies.  State Farm paid under neither.

¶2        Two lawsuits ensued.  In the first, brought in 2019 (which, naturally, we call the "2019 Lawsuit"), Frank sued State Farm under both policies.  That lawsuit remains pending in superior court.  In the second, on appeal here, State Farm turned the tables and sought a declaration that UIM coverage under both policies is time barred under the applicable statute of limitations.

¶3        In this case, State Farm moved for summary judgment.  The court balked, concluding Frank complied with the statute of limitations.  But after State Farm moved for reconsideration, the court reversed course and entered judgment for State Farm.

¶4        We conclude the superior court was partially correct and partially incorrect.  The Auto Policy required Frank to request arbitration within three years of first making a claim.  Frank fell short.  So State Farm was entitled to a judgment declaring UIM coverage under the Auto Policy time barred.  But all is not lost for Frank.  Unlike the Auto Policy, the Umbrella Policy required Frank to initiate a lawsuit in state or federal court within three years of making a claim.  Frank did so with the 2019 Lawsuit.  So State Farm was *not* entitled to a judgment declaring UIM coverage under the Umbrella Policy time barred.  We partially affirm and partially vacate the judgment and remand for further proceedings (if any).

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5         Frank was involved in an automobile accident in August 2015.   On April 20, 2016, she notified State Farm of her "potential underinsured motorist claim."   Shortly thereafter, she received a policy limits settlement of $15,000 from the other driver's insurer, but Frank claimed damages exceeding $15,000.

¶6         The Auto Policy provides $100,000 of UIM coverage, and the Umbrella Policy provides $2,000,000 of UIM coverage.   Both policies spell out how a UIM dispute is resolved.   Starting with the Auto Policy, it requires Frank or State Farm to make a written request for arbitration of disputed UIM claims:

> 1. The insured and we must agree to the answers to the following two questions:
>
>> a.  Is the insured legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle; and
>>
>> b.   If the insured and we agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the insured is legally entitled to recover from the owner or driver of the underinsured motor vehicle?
>
> 2.  If there is disagreement on the answers to either or both questions, then the disagreement will be resolved *by arbitration upon written request of the insured or us*.
>
> . . .
>
> 7.  Any arbitration or suit against us will be barred unless commenced within three years after the date you notified us in writing of the underinsured motor vehicle claim.

¶7         The Umbrella Policy is different.   It requires Frank to press a UIM claim by filing a lawsuit in state or federal court:

> 1. a. The insured and we must agree to the answers to the following two questions:

3

(1) Is the insured legally entitled to collect damages from the owner or driver of the . . . underinsured motor vehicle?

(2) If the insured and we agree that the answer to 1.a.(1) above is yes, then what is the amount of the damages that the insured is legally entitled to collect from the owner or driver of the . . . underinsured motor vehicle?

b. If there is no agreement on the answer to either question in 1.a. above, then *the insured shall*:

(1) within three years after providing us written notice of the claim, *file against us a lawsuit*, in a state or federal court that has jurisdiction;

. . .

(3) agree that we may contest the issues of liability and the amount of damages[.]

¶8        On May 18, 2018, slightly more than two years after Frank gave notice of her UIM claim, State Farm wrote to confirm her "intent to present an Underinsured Motor Vehicle claim." State Farm stated, consistent with the Auto Policy, that any disagreement would be "resolved by arbitration upon written request of the insured or us" and that arbitration must be "commenced within three years after the date you notified us in writing of your Underinsured Motor Vehicle claim." State Farm also said it would "use the date of this letter as the date you notified us of your . . . claim."

¶9        In February 2019, Frank made a policy limits demand for $2.1 million. She gave State Farm an open extension to respond. In April 2019, State Farm wrote Frank regarding "UM/UIM Arbitration," stating that it was preparing disclosures for an arbitration proceeding. State Farm later sent a letter proposing arbitrators. State Farm also proposed "exchang[ing] Disclosure Statements within 60 days" and stated its intent to examine Frank under oath on August 2, 2019.

¶10        Neither arbitration nor the examination under oath went forward. Instead, Frank commenced the 2019 Lawsuit on August 14, 2019. In her complaint, Frank alleged that she purchased UIM coverage "in the amount of $2,100,000 from State Farm as part of her policy of coverage." Frank alleged that State Farm effectively denied her UIM claim by doing

nothing to investigate or resolve it. Frank alleged that "State Farm . . . never indicated that it disagreed . . . as to whether [she] is legally entitled to recover compensatory damages . . . or . . . the amount of the compensatory damages that [she] is legally entitled to recover," and therefore she did not have to arbitrate her UIM claim. She alleged she had been deprived "the unpaid benefits of the policy" and sought compensatory damages.

¶11　　　　State Farm filed this lawsuit in December 2021, seeking declaratory relief. State Farm alleged that any claim for UIM coverage was time-barred under A.R.S. § 12-555(C)(2) because Frank had "failed to request arbitration or respond to State Farm's request for arbitration." State Farm moved for summary judgment, which the superior court initially denied. The court concluded State Farm extended Frank's deadline to request arbitration or file suit to May 18, 2021. The court determined that the 2019 Lawsuit satisfied the statute of limitations for both policies.

¶12　　　　State Farm moved for reconsideration. Citing only the Auto Policy, it argued "the statute required [Frank] to request arbitration because that is the proper forum according to the terms of the policy." State Farm cited a minute entry from the 2019 Lawsuit to contend Frank argued that her claim in that lawsuit "was separate and different from a[] UIM claim" and that she "was not seeking to resolve her UIM claim" in the 2019 Lawsuit.

¶13　　　　The court granted reconsideration. The court concluded Frank was estopped from arguing the 2019 Lawsuit satisfied the statute of limitations because she argued the 2019 Lawsuit "was separate from the UIM claim and that the lawsuit did not constitute the arbitration request." The court decided that UIM coverage under both policies was time-barred because Frank never requested arbitration. The court entered judgment in State Farm's favor.

¶14　　　　Frank timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶15　　　　Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment *de novo* and view the evidence and reasonable inferences in favor of Frank, the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58 ¶ 9 (2022). A defendant asserting a statute of limitations defense has the

burden to prove the statute bars a claim. *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139 (App. 1996).

## I. The Statutory Framework

¶16 The parties agree A.R.S. § 12-555 contains the relevant limitations period. Section 12-555 sets forth a three-step process for UIM claims "if settlement is not reached."

¶17 First, A.R.S. § 12-555(B) provides that an insurer is not liable for UIM benefits unless the claimant provides written notice that she has a UIM claim under an insurance policy "within three years after the date of the accident that caused the bodily injury." In addition to the three-year notice requirement, the claimant must make a claim against the underlying tortfeasor's insurer or file a claim against the tortfeasor within the time required under A.R.S. § 12-542 (or the applicable limitations period under the law where the accident occurs, if outside Arizona). A.R.S. § 12-555(B).

¶18 Second, the UIM insurer must give written notice that it will not be liable unless the claimant "request[s] arbitration or file[s] suit pursuant to the terms of the insurance contract within three years" of providing the insurer notice of the UIM claim. A.R.S. § 12-555(C)(1). The insurer has two years from receiving notice of the UIM claim to provide this written notice. *Id.*

¶19 Third, the statute ends with a limitations period for requesting arbitration or filing a lawsuit relating to UIM benefits. The statute provides that "[a] person shall request arbitration or file suit pursuant to the terms of the insurance contract within three years after providing" written notice of the UIM claim. A.R.S. § 12-555(C)(2). If "the person" does not request arbitration or file a lawsuit within three years of providing written notice of a UIM claim, "the insurer is not liable for" UIM benefits. *Id.*

## II. Settlement

¶20 The introductory clause in A.R.S. § 12-555(C) states that its limitations period applies only "[i]f settlement is not reached." Frank seizes on that language and argues that summary judgment was inappropriate because there were material fact questions about whether the parties settled Frank's claims. Frank more specifically contends State Farm accepted her policy limits demand by not responding to it for more than a year.

**¶21** Settlement agreements, which Arizona law favors, are governed by common-law contract principles. *Emmons v. Super. Ct.*, 192 Ariz. 509, 512 ¶¶ 11, 14 (App. 1998). An enforceable contract requires an offer, acceptance, consideration, and sufficient specification of terms. *Armiros v. Rohr*, 243 Ariz. 600, 605 ¶ 17 (App. 2018). Acceptance occurs when one manifests agreement to the terms of an offer in a way the offer requests or requires. *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212 (App. 1983). One accepts an offer through silence only in limited circumstances. Those circumstances are described in Restatement (Second) of Contracts § 69 (1981). *See Cook v. Cook*, 142 Ariz. 573, 576 (1984) (relying on the Restatement (Second) of Contracts for principles of contract formation). For example, one accepts an offer through silence by taking the benefit of offered services with reason to know the offeror expects compensation. *See* Restatement (Second) of Contracts § 69(1)(a). One also accepts an offer through silence by acting inconsistent with the offeror's ownership of offered property. *Id.* § 69(2). And one accepts an offer through silence if the offeror gives the offeree reason to understand that acceptance through silence is sufficient. *Id.* § 69(1)(b).

**¶22** State Farm's silence here did not resemble any of the situations where silence equals acceptance. In the superior court, Frank cited Arizona's Unfair Claims Settlement Practices Act ("Settlement Act") to contend State Farm had to "respond . . . in a timely, prompt matter as required by Arizona law[.]" No provision of the Settlement Act purports to alter the common-law requirements for contract formation, including for assent through silence. As this court explained, the Settlement Act is not "a standard of conduct against which an insurer's conduct in handling an individual claim is to be measured for creating a claim for relief." *Melancon v. USAA Cas. Ins. Co.*, 174 Ariz. 344, 347 (App. 1992).

**¶23** The two opinions Frank cites to us do not further her cause. In *Farm and Auto Supply v. Phoenix Fuel Co.*, our supreme court explained that "the question of whether silence would amount to assent to the provisions contained on an invoice" is fact and case specific. 103 Ariz. 344, 347 (1968). The court held that receiving but not signing invoices containing attorney fees provisions did not constitute a binding contract. *Id.* at 349. The court noted that silence can operate as acceptance when it "has the effect to mislead." *Id.* at 348. But Frank has not established that State Farm misled her regarding its silence. For example, Frank did not produce evidence that State Farm said she should equate its silence with acceptance. *See* Restatement (Second) of Contracts § 69(1)(b).

**¶24** The second case, *Swingle v. Myerson*, concluded that the defendant owed the plaintiff a finder's fee for services because the defendant did not reject the plaintiff's "terms and expectation of compensation." 19 Ariz. App. 607, 609 (1973). *Swingle* is consistent with Restatement (Second) of Contracts § 69(1)(a), stating that one can accept an offer through silence by taking the benefit of offered services. Frank does not claim she offered services to State Farm, which State Farm then took advantage of knowing Frank expected payment. *Swingle* is inapposite.

**¶25** State Farm did not accept, through silence or otherwise, Frank's policy limits demand, and there is no evidence in the record even creating a genuine issue of material fact on that issue. Thus, we must address State Farm's assertion that Frank is time barred from seeking UIM coverage.

### III. Frank's Deadline Under A.R.S. § 12-555

**¶26** In relevant part, A.R.S. § 12-555(C)(2) requires that "[a] person . . . request arbitration or file suit pursuant to the terms of the insurance contract within three years after providing the written notice prescribed in subsection A or B of this section." A.R.S. § 12-555(C)(2). We first determine when the three-year deadline expired, before addressing whether Frank complied with that deadline.

**¶27** Frank provided State Farm with notice of her UIM claim on April 20, 2016. Thus, the deadline for initiating arbitration or filing a lawsuit would ordinarily be April 20, 2019 (three years after April 20, 2016). Frank argues the deadline should have been extended further. We agree with her in part and conclude her deadline was May 18, 2021.

#### A. State Farm's Noncompliance with A.R.S. § 12-555(C)(1)

**¶28** Frank first contends she did not have to comply with subsection (C)(2) because State Farm violated subsection (C)(1), having failed to provide the required written notice within two years of receiving her notice. We interpret statutes "according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023). "When the statute's language is clear and unambiguous, we must give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017).

¶29        We disagree that State Farm's failure to provide notice within two years extended Frank's deadline.  Commencement of the three-year period in (C)(2) is not tied to the insurer's compliance with (C)(1).  Instead, subsection (C)(1) unambiguously ties the three-year statute of limitations to the date notice is provided under subsections (A) or (B).  Subsection (C)(2) says arbitration or a lawsuit "shall" commence "within three years after providing the written notice prescribed in subsection A or B of this section."  The legislature could have tied the period in (C)(2) to the notice required under (C)(1); it did not do so.  It instead tied the period to the notice required in (A) or (B).  And that makes sense because tying the statute of limitations to the notice required under (C)(1) could result in a never-ending limitations period if the insurer fails entirely to provide notice.  Thus, we agree with the federal district court in Arizona that an insurer's non-compliance with (C)(1) does not extend the claimant's limitations period in (C)(2).  *See Creasman v. Farmers Cas. Ins. Co.*, ___ F. Supp. 3d ___, 2023 WL 4533964, at *6 (D. Ariz. July 13, 2023).  State Farm's noncompliance with subsection (C)(1) did not change Frank's deadline under subsection (C)(2).

### B.        Equitable Estoppel

¶30        Frank also argues the superior court should have extended her deadline to commence arbitration or a lawsuit against State Farm under the doctrine of equitable estoppel.  Frank argues State Farm first disputed her UIM claims in December 2020, and thus the three-year period did not start to run until that time (making her deadline December 2023).  Though we agree that Frank's deadline was extended from April 20, 2019, to May 18, 2021, we reject her argument that the deadline should have been extended further.

¶31        Arizona courts have recognized equitable exceptions, including equitable estoppel, to statutes of limitations "when necessary to prevent injustice."  *Nolde v. Frankie*, 192 Ariz. 276, 279 ¶ 13 (1998).  "One such exception applies when [one party] induces [another] to forbear filing suit."  *Id.* ¶ 14.  Four factors must be established for equitable estoppel to apply: (1) one party must engage in affirmative conduct causing forbearance; (2) the conduct must cause forbearance; (3) the conduct must be reasonably expected to cause forbearance; and (4) the claimant must bring an action within a reasonable time after the conduct stops.  *Id.* ¶ 20.

¶32        Here, State Farm did not comply with the two-year notice requirement in § 12-555(C)(1).  Instead, State Farm provided its notice slightly more than two years after Frank notified State Farm of her UIM

claim. But State Farm voluntarily told Frank it would consider the date of its late notice (May 18, 2018) as the date of Frank's notice of claim under § 12-555(B), giving Frank three years from that date to request arbitration or file a lawsuit (until May 18, 2021 rather than April 20, 2019). State Farm's letter was affirmative conduct that could be reasonably expected to, and did, cause Frank to forebear from commencing an action against State Farm. In fact, State Farm concedes Frank did not have to act until May 18, 2021.

¶33        Frank claims she should have had even more time. She argues the three-year period for commencing an action did not start until State Farm first disputed her UIM claim, which Frank says occurred in December 2020. We disagree. State Farm's delay in disputing her claim is not affirmative conduct satisfying any of the four factors for equitable estoppel. *See Nolde*, 192 Ariz. at 279 ¶ 20. More to the point, the legislature pegged the three-year period in § 12-555(C)(2) for commencing an action to the date when a UIM claim is first made. Frank's estoppel argument, if adopted, would re-calibrate that accrual date to when an insurer formally disputes a UIM claim. If we do so for Frank, we will have to do so for most UIM claimants—insurance companies rarely dispute claims instantaneously. Had the legislature wanted to use the date the insurer first disputes a claim, it would have said so in the statute. But the legislature chose the notice of claim date instead. We will not use equitable principles to override the legislature's choice of accrual date. Frank, as a matter of law, was required to request arbitration or file a lawsuit on or before May 18, 2021.[1] *See id.* ("[A] court appropriately may conclude as a matter of law that no reasonable jury could find for the plaintiff on one or more of the" four estoppel factors.).

## IV.    Application of the Statute of Limitations

¶34        Having determined that the applicable statute of limitations expired on May 18, 2021, we must decide who was required to act by that date and whether they did so. We conclude Frank was required to request arbitration or file a lawsuit, not State Farm. Frank did not meet the statute of limitations under the Auto Policy, but she did do so under the Umbrella Policy.

---

[1]        In her opening brief, Frank also mentions equitable tolling. But she does not argue equitable tolling would extend the limitations period if equitable estoppel does not.

### A. The Statutory Requirement

**¶35** Under § 12-555(C)(2), as applied here, "a person" (Frank) was required to "request arbitration or file suit pursuant to the terms of the insurance contract" by May 18, 2021. Frank contends "person," which is broadly defined in A.R.S. § 1-215, includes State Farm. Frank, thus, interprets "a person" as referring to State Farm or Frank, and contends State Farm's arbitration demand in April 2019 relieved Frank from doing anything further. State Farm interprets "a person" to refer only to Frank, so she was required to request arbitration or file a lawsuit. The statutory text supports State Farm's interpretation.

**¶36** Subsection (C)(2) treats "the insurer" and "a person" differently. The second sentence of that subsection states that "[i]f the person does not comply with this paragraph, the insurer is not liable for uninsured motorist coverage benefits or underinsured motorist coverage benefits." A.R.S. § 12-555(C)(2). Given that plain language, "the person" referred to in the first clause of that sentence is the person who asserts liability against the insurer, not the insurer itself.

**¶37** Realizing the second sentence cuts against her interpretation, Frank puts great weight on the first sentence. Frank points out that the first sentence in subsection (C)(2) refers to "a person" while the second sentence refers to "the person." Though acknowledging that "the person" in the second sentence may refer to the person making the claim (her), Frank argues the phrase "a person" in the first sentence refers more broadly to both the insurer and the person making the claim. But the first sentence of subsection (C)(2) also makes clear that the person referred to therein is the same person who must provide written notice of the UIM claim to the insurer under subsection (B). Subsection (B), in turn, places that notice requirement on the "person making the claim," not the insurer. Subsection (B) says that "[a]n insurer is not liable for underinsured motorist coverage benefits unless the person making the claim gives written notice to the insurer of the person's intent to pursue the claim." A.R.S. § 12-555(B).

**¶38** Thus, throughout A.R.S. § 12-555, the legislature differentiated between, on the one hand, the person who provides notice of a claim and pursues liability against an insurer, and on the other, the insurer. Frank's interpretation blurs that distinction and gives the word "person" different meanings within a single statutory subsection. We "presume a word or phrase bears the same meaning throughout a text." *Fann v. State*, 251 Ariz. 425, 442 ¶ 60 (2021). Frank has not overcome that presumption.

¶39            Frank is "the person making a claim," and "the person" pursuing liability for UIM benefits, so Frank is "a person" required to "request arbitration or file suit pursuant to the terms of the insurance contract" within three years. *See* A.R.S. § 12-555. State Farm's correspondence regarding arbitration did not excuse Frank from timely requesting arbitration or filing a lawsuit before May 18, 2021.

### B.      Arbitration Under the Auto Policy

¶40            Recall that § 12-555(C)(2) requires a person to request arbitration or file a lawsuit "pursuant to the terms of the insurance contract." We, therefore, look to the language of the Auto Policy to determine how Frank was required to pursue her claim against State Farm under that policy. We interpret contracts according to their plain language and in view of all the circumstances. *In re Est. of Lamparella*, 210 Ariz. 246, 250 ¶ 21 (App. 2005).

¶41            The Auto Policy provides that Frank and State Farm must agree on two questions—whether Frank is entitled to recover compensatory damages from the underinsured motorist and, if so, the amount of such damages. If they disagree on either of those questions, "the disagreement will be resolved by arbitration upon written request" of State Farm or Frank. But the Auto Policy then makes clear, parroting § 12-555(C)(2), that Frank was required to request arbitration within three years of notifying State Farm of her UIM claim: "Any arbitration or suit against {State Farm] will be barred unless commenced within three years after the date [Frank] notified [State Farm] in writing of the underinsured motor vehicle claim."

¶42            The Auto Policy, therefore, makes clear that if Frank wanted to press a UIM claim thereunder, she was required to request arbitration within three years of her notice of claim to State Farm. State Farm extended that three-year deadline to May 18, 2021. *See supra* ¶ 32. Yet Frank did not request arbitration prior to that date—only State Farm requested arbitration and Frank did not participate. We, therefore, affirm summary judgment as to the Auto Policy.

### C.      A Lawsuit Under the Umbrella Policy

¶43            Though the Umbrella Policy has the same parties as the Auto Policy, it has different requirements for pressing a UIM claim. The Umbrella Policy requires Frank and State Farm to agree on the same two topics as the Auto Policy—legal entitlement to, and the amount of, damages. If there is no agreement on either question, Frank shall "within three years after providing [State Farm] notice of the claim, file against

[State Farm] a lawsuit, in a state or federal court that has jurisdiction." If Frank does so, she must "agree that [State Farm] may contest the issues of liability and the amount of damages."

¶44        Frank argues she complied with the Umbrella Policy when she filed the 2019 Lawsuit.  State Farm responds that the 2019 Lawsuit was insufficient because that was a bad faith action that did not involve a claim for UIM benefits.  State Farm takes an overly-cramped view of Frank's allegations in the 2019 Lawsuit.

¶45        In the complaint from the 2019 Lawsuit[2], Frank asserted that State Farm refused to offer any compensation for the 2015 automobile collision and that was a *de facto* denial of coverage.  Frank alleged State Farm "refused to provide Plaintiff with fair compensation for her claim."  Later in the complaint, Frank alleged "State Farm intentionally denied Plaintiff's claim and/or failed to pay Plaintiff's claim and/or delayed payment of Plaintiff's claim without a reasonable basis when State Farm refused to offer Plaintiff fair compensation for her claim."  And Frank concluded by asserting that "[a]s a result of State Farm's breach of the duty of good faith and fair dealing, Plaintiff lost the unpaid benefits of the policy[.]"  Frank requested "general and compensatory damages."

¶46        The 2019 Lawsuit satisfied the Umbrella Policy's requirement that Frank file "a lawsuit" against State Farm within three years.  Subsection (C)(2) specifies only that a lawsuit be filed "pursuant to the terms of the insurance contract[.]"  *See* A.R.S. § 12-555(C)(2).  While it appears the 2019 Lawsuit asserts a bad faith claim against State Farm, the complaint accuses State Farm of denying Frank fair compensation for her UIM claim in multiple instances.  To resolve those allegations, the court will have to determine State Farm's liability and Frank's damages under the Umbrella Policy.  *See Rawlings v. Apodaca*, 151 Ariz. 149, 158 (1986) ("We have previously noted that the remedy for breach of the implied covenant of good faith is ordinarily on the contract itself.").

---

[2]        We may take judicial notice of the content of the complaint in the 2019 Lawsuit.  *See In re Sabino R.*, 198 Ariz. 424, 425 ¶ 4 (App. 2000) ("[Arizona Rule of Evidence 201] allows this court to take judicial notice of anything of which the trial court could take notice, even if the trial court was never asked to take notice.  It is proper for a court to take judicial notice of its own records or those of another action tried in the same court." (internal citations omitted)).  We take no position on the merits of the allegations contained therein.

¶47        The Umbrella Policy also states that, if Frank brings a lawsuit within three years, Frank must agree State Farm "may contest the issues of liability and the amount of damages" in the lawsuit.  So if State Farm is unsatisfied with the clarity of Frank's complaint in the 2019 Lawsuit, State Farm can raise that policy provision to dispute its liability and Frank's damages in the 2019 Lawsuit.  But that option does not mean Frank did not "file against [State Farm] a lawsuit, in a state or federal court that has jurisdiction," which is all the Umbrella Policy required of Frank.

###        D.        Judicial Estoppel

¶48        One last issue remains.  In granting summary judgment, the superior court concluded Frank was estopped from arguing that the 2019 Lawsuit satisfied A.R.S. § 12-555(C)(2).  State Farm did not specify what type of estoppel it relied on, and the superior court did not specify what type of estoppel it applied.  It appears, however, the court applied judicial estoppel and, at oral argument in this court, State Farm agreed the superior court most likely applied that doctrine.

¶49        Judicial estoppel prevents a party from taking and prevailing on inconsistent positions in successive or separate actions.  *See, e.g.*, *Martin v. Wood*, 71 Ariz. 457, 459 (1951).  Judicial estoppel has three requirements: (1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior proceeding.  *Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 41 ¶ 35 (App. 2012).  The doctrine focuses on factual assertions, not opinions or legal positions.  *Id.* at 41 ¶ 36; *accord Miles v. Franz Lumber Co.*, 14 Ariz. 455, 457 (1913) (noting that a party "should not be permitted to 'blow hot and cold' with reference to the same transaction" or facts).  We apply judicial estoppel cautiously; if a court has not conclusively accepted a party's position, there is no risk of inconsistent results and "the judicial process is unimpaired."  *Bank of Am. Nat. Trust & Sav. Ass'n v. Maricopa County*, 196 Ariz. 173, 176 ¶ 8 (App. 1999); *see also State Farm Auto. Ins. Co. v. Civil Serv. Emp. Ins. Co.*, 19 Ariz. App. 594, 600 (1973) (stating that judicial estoppel "is not merely that a party has taken inconsistent positions in judicial proceedings").

¶50        In the 2019 Lawsuit, State Farm sought dismissal of Frank's complaint, arguing Frank had to arbitrate her UIM claim.  Frank defeated that motion by arguing that her claim did not fall within the scope of any arbitration provision.  The superior court in this case found Frank "argued [in the 2019 Lawsuit] that [it] was separate from the UIM claim and that the lawsuit did not constitute the arbitration request."  The superior court

relied on a minute entry in which the court handling the 2019 Lawsuit denied State Farm's motion to dismiss. According to the court in the 2019 Lawsuit, Frank asserted (1) she "was not requesting a determination of the amount of [UIM] compensation she is entitled to receive" and (2) her bad faith claim "focuses not on how much was owed to [her] but on how [State Farm] handled her claim."

¶51 Frank explained these positions to the superior court, contending the 2019 Lawsuit's purpose was "not to determine the amount of the claim, but to be paid the amount State Farm agreed to pay her by [its] failure to dispute the amount she claimed." At the very least, this is consistent with her contention in this case, discussed above, that State Farm agreed to settle the UIM claim by not promptly responding to her policy limits demand. It is also consistent with Frank's allegations in the 2019 Lawsuit alleging she had "lost the unpaid benefits of the policy" and demanding "general and compensatory damages" that presumably would include those unpaid benefits. *See Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 111 (App. 1995) ("If the [insurance] company breaches its duty [of good faith and fair dealing], its insured . . . may recover compensatory damages for breach of contract, or damages in tort if the insurer's actions rise to the level of bad faith.").

¶52 As such, the minute entry underlying State Farm's motion for reconsideration does not show Frank changed a factual position. *See Standage Ventures, Inc. v. State*, 114 Ariz. 480, 484 (1977) ("[T]he law will not allow a party 'to have his cake and eat it too.'"). Nor is there evidence of inconsistent results between the two cases—the record indicates only that the court handling the 2019 Lawsuit denied State Farm's motion to dismiss. *See Bank of Am.*, 196 Ariz. at 175 ¶ 8; *State v. Towery*, 186 Ariz. 168, 183 (1996) ("[J]udicial estoppel is generally not applied when the first inconsistent position was not a significant factor in the initial proceeding."). And, in any event, State Farm was never entitled to compel arbitration under the Umbrella Policy—that policy required Frank to file a lawsuit, not request arbitration. We vacate summary judgment as to the Umbrella Policy.[3]

---

[3] State Farm suggested at oral argument in this court that a decision in its favor under the Auto Policy would cut off UIM coverage under the Umbrella Policy. Frank disagreed. That issue is not before us, and we do not address it.

## CONCLUSION

¶**53**    We affirm summary judgment as to the statute of limitations for UIM coverage under the Auto Policy, vacate summary judgment as to the statute of limitations for UIM coverage under the Umbrella Policy, and remand for further proceedings (if any).[4]



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[4]    We grant Frank's post-argument motion for supplemental briefing and deny State Farm's motion to strike as moot.